# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

HALL & SMITH *v.* BANK OF VIRGINIA.

AND

RENICK *v.* LUDINGTON *et al.*

Decided July 9, 1879.

| 15 | 323 |
| 39 | 19 |
| 15 | 323 |
| 54 | 235 |

| 15 | 323 |
| f64 | 175 |

| 15 | 323 |
| 66 | 84 |

1879
June Term.

1. A case decided at one term of the Supreme Court of Appeals, at which no motion or petition is made or filed to rehear it, cannot be reheard by that Court upon its merits for the correction of errors of judgment in the final decree or judgment of the Appellate Court at the former term.

2. Chapter 52 of the Acts of the Legislature of West Virginia, approved March 8, 1879, does not authorize the said Court to review and rehear any cases decided by said Court at the special term thereof in the months of October, November and December, 1878, for the correction of errors of judgment in the final decrees or judgments of said Court, but only for the correction of clerical errors therein.

3. The clause in the Constitution requiring the Supreme Court of Appeals to "decide every point arising upon the record, and give its reasons therefor in writing" is directory and does not affect the common law rule of *res judicata*. *Henry et al.* v. *Davis*, 13 W. Va.

4. In so far as there is an apparent inconsistency or conflict in the case of *Renick* v. *Ludington et al.* between the decree of the 21st day of June, 1876, and that of the 25th day of June, 1877, the latter should be taken as a modification of the former by the court below, and both decrees being before the Appellate Court at the same time and considered and acted upon by the Appellate Court together, the Appellate Court, in so far as it affirmed said decrees, affirmed the former as modified by the latter.

Two petitions for a rehearing by this Court, one by the Bank of Virginia and the other by T. H. Ludington and others, in two causes in one of which John Hall and B. H. Smith were plaintiffs, and the President, Directors and Company of the Bank of Virginia and others were

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

defendants, and in the other of which B. F. Renick was plaintiff and S. C. Ludington and others were defendants.

The facts of the case fully appear in the opinion of the Court.

*W. W. Gordon* presented the petition for the Bank of Virginia.

*A. C. Snyder* presented the petition for S. C. Ludington *et al.*

HAYMOND, JUDGE, delivered the opinion of the Court:

The decision in the case of *Hall & Smith* v. *The Bank of Virginia,* in which a rehearing is prayed by the said bank was made by this court at a special term thereof continued and held on the 21st day of December, 1878; and the decision in the case of *Renick* v. *Ludington et al.* was made by this court at the same special term and on the 14th day of December, 1878, thereof. The Legislature on the 7th day of March, 1879, passed an act entitled: "An act providing for reviews and rehearings in the Supreme Court of Appeals of causes decided at the special term held in the city of Wheeling in the months of October, November and December, 1878," which was approved March 8, 1879, which is in these words, viz: "*Be it enacted by the Legislature of West Virginia* :

"1. That the Supreme Court of Appeals, at the regular term to be held in the city of Wheeling in June, 1879, may review and rehear any cases decided by said court at the special term held in the city of Wheeling in the months of October, November and December, 1878, so far as to allow the correction of any clerical error in any decree or judgment pronounced by said court, or when the court, on its own motion, may desire to rehear and correct such decree or judgment. But no argument, either written, printed or oral shall be heard unless requested by the Court." Since the passage of said act, and during the present term of this Court said petitions have been presented to this Court.

The petitioner in the first named cause, in speaking of

said act, says : "If it commanded the Court to grant a rehearing, it would be justly subject to the imputed objection, because whether or not a new hearing should be allowed is always a judicial question ; but such is not the effect of the act. A rule of law prescribes that a cause shall not be reopened after the end of the term at which it was decided. The act merely repeals that rule of law, and thereby leaves the court at liberty to rehear, if in its judicial discretion it sees fit to do so." Counsel for the petitioners in the case of *Renick* v. *Ludington et al.* in speaking of this rule says, among other things: " But we claim that this rule of law does not apply to an Appellate Court, a court of last resort. Neither reason, law nor the practice of the courts justifies such a conclusion. It is conceded that by analogy to the rule in the circuit courts a very general, though erroneous impression has obtained in the legal profession, that the Court of Appeals has no power to rehear cases after the term. This impression has no doubt been much strengthened by the practice of the English courts. But the practice in these courts is founded on the statute of 11 Hen. IV, ch. 3, which in terms prohibits all courts from any order in cases determined after the term has ended," &c. Thus it seems that the counsel in the one case maintain that the Supreme Court of Appeals of this State has no inherent power to reopen its judgments and decrees after the end of the term, independent of the statute ; and the counsel in the other [case think] the Court has such power independent of the statute.

Whether this Court has the inherent power to reopen its judgments and decrees after the end of the term independent of the statute, in so far as to correct simple clerical errors therein, I shall not stop here to consider, as I do not think that question fairly arises in these cases as presented by the petitions. The errors complained of in the petitions are not clerical, but if errors at all, are errors in the judgment of this Court. I shall first proceed to enquire whether the Court has the inherent

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

power, independent of the said statute, to review, rehear and reopen its judgments or decrees for errors of judgment, even where such errors in fact exist.

In the case of *The Commonwealth* v. *Beaumarchais*, 3 Call 107, that portion of the syllabus which relates to the subject under consideration is: "When an interlocutory decree is entered at one term of the Court of Appeals it may be set aside at a subsequent term." It seems in this case that at a term of the Court of Appeals of Virginia held in November, 1801, the judges were all agreed, that the decree of the court below, as it stood, was erroneous, but equally divided in opinion, whether the contract should be settled by a scale of four to one, instead of the statutory scale of five for one. A decree was entered, stating that by the unanimous opinion of the court, the decree of the high court of chancery was reversed; and, on account of the division among the judges as to the scale, that no further decree could be made, as the case was not provided for by the act of Assembly. At a subsequent term held in May, 1803, the court desired it to be argued, whether under the act of Assembly relative to cases where the court is divided in opinion (May, 1779, c. 22, 10 Stat. Larg. 92) the decree ought not to have been affirmed for the balance due according to the scale of four for one, agreeably to the opinion of the two judges, who thought that scale ought to have been adopted. Afterwards on the 10th day of May, 1803, the court reviewed the decree of November, 1801. "1. Holding that, on the equal division of the judges in the partial affirmance of the decree, it ought to have been affirmed, as far as the two judges thought it just, in like manner as if the decision had been on a question of a total affirmance or reversal. 2d. That the court are not precluded from correcting the mistake in the former entry, since the record remains in court, and the cause undecided. It would seem strange indeed, that when we are constituted to correct the errors of other courts, we should not have power to set right our own mistakes, in

the course of proceedings in a cause yet pending." See p. 151.

1879.
June Term.

Hall & Smith
Bank of Virginia
and
Renick
v.
Ludington et al.

It seems clear to me that the judges, when they made their final decision in the cause, regarded the case as still pending in that court and not finally decided by them.

In the case of the *Bank of Virginia* v. *Craig*, 6 Leigh 399, 439, the syllabus on this subject is: "The court cannot examine the propriety of a decree made at a former term *inter partes*, nor set aside such decree of a former term, on the ground that it decided matters *coram non judice* at the time." It appears that this case was decided in May, 1835; and afterwards, in April, 1836, Walter Jones moved the court to set aside the decree for several apparently strong reasons. Jones, Stanard and Johnson were the counsel who argued the motion, but the court on argument and consideration overruled Jones's motion, "on the ground that it could not now set aside the decree entered at the former term, whether it was prematurely entered, or whether it was objectionable on its merits or not."

In the case of *Towner* v. *Lane's adm'r*, 9 Leigh 262, the syllabus is: "Upon a petition for a rehearing of a cause in *this* Court, at a term subsequent to that at which the Court has entered a decree, but before that decree has been certified to the court below, on the ground that the decree was founded on a mistake in point of fact, the question was whether it was in the power of the Court to allow the rehearing ; and upon this question four judges present were equally divided in opinion." In this case Judge Parker says at page 278: "It is just and expedient that there should be some termination to litigation. Particular cases of hardship must yield to general rules of convenience. We must fix *some* period at which cases shall be considered as finally ended, or this Court will be overwhelmed with applications for rehearing, and parties will be kept in continual uncertainty of their rights. Fix on any we may, individual injustice may be done,

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

but upon the whole the public good will be promoted, by avoiding the mischiefs of uncertainty and long protracted law suits.    *    *,    *    *

"For these reasons I should incline on principle to say, that the end of the term should be the end of the litigation, so far as this Court is concerned ; and I think this rule is established by authority.

"In England, it has been repeatedly held, that when judgment is once given and enrolled, no amendment is permitted at any subsequent term. See Christian's Blacks. Com. 407. All the cases proceed upon that distinction. In *Blakemore's Case*, 8 Co. 156 b, 157 a, it is said, that at *common law* the judges might amend as well their judgment as any part of their record, &c., *in the same term*, for during the term, the record is in the breast of the judges, and not in the roll. In Bac. Abr. Amendments and Joefails, A. p. 145, it is laid down, that the record of a judgment is in the breast of the court *all the same term*; because it is a roll of that term, and so in the breast of the court *during the whole term*. So in the case of *The Parish of St. Clemens* v. *The Parish of St. Andrews Holborn*, 6 Mod. 287, Salk. 606, it was held that the judgment of justices is in their breast, and alterable by them, all the same session. These decisions seem to me to have settled the doctrine in that country whence we derive the principles of our jurisprudence. Nor do I think, that the forbidding of alterations in the judgment of the court *after the term* originated in the statute, 11 Hen. IV. ch. 3. That statute did not prohibit them, but was as I take it, only in affirmance of the common law. Coke, Blackstone and other writers speak of amendments after the term not being allowed at common law ; and in *Chambers* v. *Moore*, 2 Lev. 431, it is expressly affirmed, that such amendments could not be made at *common law*; citing the year book, 4 Edw. III., pl. 9 b., which was before the statute, 11 Hen. IV., ch. 3.

Looking next to our own precedents, we have, first,

the case of *The Commonwealth* v. *Beaumarchais*, 3 Call 1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*
107, 151. In that case all the Judges thought the decree
of the court below erroneous as it stood, but being
divided in opinion whether the contract should be set-
tled by a scale of *four* for *one* or *five* for *one*, a decree was
entered, stating that the chancellor's decree was re-
versed, but that on account of the division among the
Judges as to the scale of depreciation, *no further decree
could be made*, since the case was not provided for by the act
of Assembly. But at a subsequent term, the court being
of opinion that an equal division of the Judges is the
partial affirmance of the decree, it ought to have been
partially affirmed, and that the cause still remained in
the Court undecided and yet depending, the decree was
corrected. Now, whether the Court was right or wrong
in saying the former decree was interlocutory and not
final, it is obvious it placed its control over the decree
on that ground, and not on the ground of power to
change the decree after the term; in truth, this ground
is excluded by the reasons assigned.

In the case of *Campbell* v. *Patterson*, decided in
March, 1835, the Court proceeded either on the ground
of consent, or (what is more probable from the entry) on
the ground that the Court had no authority to hear the
cause in the absence of retained counsel, necessarily
otherwise engaged in the house of delegates, and that the
cause had been heard by mistake, and against the rule
established by the Court in other cases; and consent hav-
ing in fact been given for the re-instatement, it was prob-
ably little considered. It seems too in that case the cer-
tificate had actually gone out; so that that distinction
will not avail.

In the case of *Glass* v. *Baker*, 6 Munf. 218, a motion
for a rehearing being made at the next term it was
overruled; the Court *doubting* at least *its right* to rehear
a cause at a subsequent term and thinking it but right
not to do it.

Then we have the case of *The Bank of Virginia* v.
42

1879
June Term.

Hall & Smith.
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

*Craig,* 6 Leigh 399, 438, which strongly appealed to the justice of the Court ; for the sureties had not been heard, and the question decided against them was *coram non judice ;* yet this Court unanimously overruled the motion for rehearing, on the ground that it could not set aside the decree entered at the former term, whether it was prematurely entered, or whether it was objectionable on its merits or not."

In the case of *Wynn* v. *Wyat's adm'r,* 11 Leigh, the syllabus is : " After this Court had reversed a judgment and remanded the case to the court below for further proceedings there, and certificate of that judgment had been sent by the clerk to the court below, a rehearing was on motion of defendant in error directed here ; whereupon this Court revoked the certificate of its former judgment, and directed the court below to surcease proceedings till further order ; and plaintiff in error being now a non-resident, ordered that service of this order on the counsel who appeared for him on the former argument should be sufficient service."     But the reporter at page 587 in a note says he supposes that though the rehearing was not allowed till March, 1840, the motion for it had been made at the previous term ; and this I infer must have been the case from the fact that the Court say in their order at page 587, that " the transcript of the judgment aforesaid was improvidently certified to the said circuit superior court," &c.   I think it may be also inferred that the question of the right or power of the Court to rehear the cause after the end of the term, at which it was decided, was not raised or considered in the case.   See opinion of Judge Baldwin in *Reids* v. *Strider's adm'r.,* 7 Gratt 83.

In the last named case Judge Baldwin at page 80 and 81 of 7 Gratt. says : " I need not consider how far this Court may amend its judgments and decrees, at a subsequent term, by correcting clerical misprisions in the entries thereof, the question here being of quite different nature.   We are called upon not to amend, but to re-

verse, annul or set aside the decree, in order that the appeal may be replaced upon our docket, and heard *de novo* upon its merits, after a revival thereof against Strider's representatives; and this too, upon the application of the adverse party, who might have had the death suggested, and process of revival issued, before the hearing. It is not the province of this Court to exercise appellate jurisdiction over its own adjudications, and it has no process adapted to such a purpose. It has no power to award writs of error to its own judgments, or allow appeals from, or bills of review to its own decrees for any error of law or of fact appearing upon the face of its records, nor can it, for errors of fact not apparent upon its records, grant writs of error *coram vobis* or entertain bills of review. It is the appellate *forum* in the last resort, for the revisal of the judgments and decrees of subordinate tribunals, which it may affirm or reverse, with power in case of reversal, to render such adjudication as the inferior court ought to have rendered. During the same term its decisions, like those of other courts of record, are within its own breast, and may be modified or rescinded as a more matured consideration may dictate; but after the end of the term the merits of its adjudications have passed beyond its control. This finality and irreversibility of the judgments and decrees of this Court is inherent in the very nature and constitution of the tribunal, and cannot be disturbed without deranging the administration of justice, and the introduction of intolerable evils in practice."

Judge Baldwin, as appears by the report, delivered this opinion in April, 1850, and it appears that Cabell, P. and Allen and Daniel JJ., concurred in the opinion and Brooke, J., concurred in the judgment of the court.

In the case of *Campbell's ex'rs* v. *Campbell's ex'r*, 22 Gratt. 649, decided in August, 1872, it was held: "1st. The decree of the Court of Appeals upon a question decided by the court below, is final and irreversible, and

*1879 June Term.*

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*

upon a second appeal in the cause, the question decided upon the first appeal cannot be reversed. 2d. In. such a case the conclusiveness of the decree of the Court of Appeals is the same, whether the first appeal was from a final or interlocutory decree of the court below. All the decrees of the Appellate Court are in their nature final; except possibly when that court disposes only of a part of the case at one term, and reserves it for further and final action at another."

. In this case Judge Moncure delivered the opinion of of the court, and after referring to and reviewing most of the Virginia decisions upon the subject, at pages 669 and 670, says: "These seem to be all the material decisions of this Court on the subject we are considering, to which we have been referred by counsel, or which we have met with, and they seem conclusively to show that after the end of the term of the Court at which a judgment or decree may be rendered by it or at all events, after such judgment or decree has been certified to the court below, it is too late to have the case reheard in this Court, upon any ground of error of law or of fact apparent upon the face of such judgment or decree, or of the record on which it was rendered. Whether the rule be founded on principle, or be merely a rule of practice, it is alike absolute and inflexible. Public policy, if not necessity, requires that it should be strictly enforced, even in cases of the greatest individual hardship. The law has been settled by these cases, and has ever since been acquiesced in, and hence no more recent cases on the subject are to be found in our reports. Applications for rehearing after the end of the term have often since been made to this Court, but have always been refused, and there the cases have ended."

Again at pages 671 and 672 in the same case Judge Moncure in delivering the opinion of the Court says: " But it is contended by the learned counsel of the appellants, that while the decree of this Court of the 28th of August, 1858, would have been conclusive, even upon

the Court itself, if it had been a final decree, yet that it was *interlocutory* only, and though conclusive upon the court below, as long as it stands, it may be and ought to be, reversed by the Court of Appeals itself for error on the face of the decree and record as they then stood."

1879
June Term.

Hall & Smith.
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*

" We know of no warrant for any such distinction as is thus attempted to be drawn between what are called final and interlocutory decrees of this Court, and we have been referred to no authority in support of this view. As was correctly said by the learned counsel of the appellees in their argument of this case, all the judgments and decrees of this Court are final, and none of them are interlocutory ; at least, when they (as they almost always do) dispose of the whole case involved in the appeal ; even though the appeal be from an interlocutory decree, and even though the cause be remanded to the court below for further proceedings to be had therein. There may possibly be an interlocutory decree in the Court of Appeals, as when that Court disposes only of a part of the case at one term, and reserves it for further and final action at another. We have something like an example of such case in *The Commonwealth* v. *Beaumarchais*, 3 Call 107, 151 referred to by Judge Parker in *Downer* v. *Lane's adm'r*, 9 Leigh 262, 280. But such cases must be extremely rare. The decree of this Court is certainly not interlocutory, and is none the less final because it is upon an appeal from an interlocutory decree of the court below. The latter decree does not impart its interlocutory nature to the decree of this Court which affirms or reverses it in whole or in part or adjudicates the principles of the cause. The case made for the Court of Appeals by an appeal from a decree of the court below whether final or interlocutory, is, as to the Court of Appeals, a complete case in itself, and the decree of that Court therein is final and conclusive between the parties, as well upon that Court itself as upon the court below ; and the Court of Appeals can do nothing more in the course of litigation until a new and

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.* different appeal is brought up to it from some decree of the court below, rendered in the cause upon subsequent proceedings in that court ; and then the Court of Appeals can only review and revise that decree without interfering with its own former decree. The two appeals are different and independent cases in this Court. The decision of this Court is not only · final in regard to the decree appealed from, but also in regard to all the prior orders and decrees in the case between the appellants and appellees. An appeal from a decree brings up the whole proceedings in the case prior to the decree ; and either party can have any error against him in these proceedings corrected without the necessity of a cross-appeal in any case. If a party fail to complain of any such error, and a decree be made upon the appeal, without correcting or noticing the error, such party will be concluded by the decree from appealing afterwards. *Burton* v. *Brown,* not yet reported. See also *Walker's ex'r, &c.* v. *Page &c.,* 21 Gratt. 636."

In the case of *Newman* v. *Mollohan,* 10 W. Va. 488, the syllabus is: " A joint judgment, in a suit in which an attachment had issued against all the defendants as non-residents, having been rendered against several of the defendants, one of them, who had pleaded took an appeal, and the Court of Appeals affirmed the judgment. Another of the defendants against whom this joint judgment was rendered, a non-resident who had not pleaded after due notice, then moved the circuit court who had rendered the judgment to reverse and annul the same, because the order of publication against him had not been made in the manner required by law, and because there had been a personal judgment against him, though he had never been served with process, and for other errors apparent on the face of the record. Held : That the circuit court properly overruled his motion, as after the affirmance of the judgment by the Court of Appeals no defendant could make a motion in the circuit court to reverse or modify the judgment, though the record of the case in the Court

of Appeals fails to show that the defendant making the motion was notified of the appeal, it being conclusively presumed he was so notified, and that all questions raised by his motion had been considered and decided by the Court of Appeals when it affirmed the joint judgment." See the opinion of the Court in this case where the subject under consideration is considered to some extent.

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

In the case of *Henry et al* v. *Davis*, decided May 4, 1878, 13 W. Va. 230, it was decided by the Court that, 5. "The clause in the Constitution requiring the Supreme Court of Appeals 'to decide every point arising upon the record; and give its reasons therefor in writing, is directory and does not affect the common law doctrine of *res judicata*. 6. The decree of the Supreme Court of Appeals upon a question decided by the court below is final and irreversible, and upon a second appeal in the cause the questions decided upon the first appeal cannot be reviewed. In such case, the conclusiveness of the decree of the Supreme Court of Appeals is the same whether the first appeal was from a final or interlocutory decree of the court below."

Syllabus 3.

The Legislature of Virginia passed an act since the late war commonly called the "enabling act," which was approved March the 5th, 1870, and the second section of the act is in the following words: "§2. All official acts heretofore done by any such officers, and otherwise lawful, are hereby declared as legal and binding as if they had been done by officers duly elected and qualified under the Constitution of this State; provided, that any judgment, decree or order rendered or made by the Court of Appeals at the term thereof, commencing on the 11th day of January, 1870, shall be subject to the supervision and control of the Supreme Court of Appeals, to be organized under the Constitution, upon the petition of any party to the cause for a rehearing; and such judgment, decree or order may be set aside and annulled, or affirmed, as to said Supreme Court may seem right and proper; but twenty days' notice of the time

June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

of making said motion or filing said petition shall be given to the opposite party," &c. The January term, 1870, of the Military Court of Appeals of Virginia commenced on the 11th of that month, and was terminated on the 25th of February following. On the 31st of January, 1870, the Court decided the case of *Griffin's 'ex'r* v. *Cunningham*, reported in 19 Gratt. 571, and on the 14th of February thereafter the Court decided the case of *The Washington, Alexandria & Georgetown R. R. Co.* v. *The Alexandria & Washington R. R. Co.*, reported in the same volume, p. 592. After the final adjournment of that Court the act above named was passed and approved. These two causes decided by the late Military Court of Appeals of Virginia, were brought before the Supreme Court of Appeals of Virginia at the November term thereof, 1870, upon motions submitted before that Court under the second section of said " enabling act ;" and Judge Christian, in his opinion in the case, at page 33 of 20 Gratt., says : " The sole question now presented for our consideration, is whether the Legislature has the constitutional authority to confer upon this Court the power to set aside, annul or affirm 'as to this Court may seem proper,' the decisions of the Court of Appeals established by the military authorities under the reconstruction laws of Congress. The question thus presented is one of the gravest import, because it directly involves the validity and constitutionality of a legislative act. It resolves itself into this simple enquiry : Is the act of the General Assembly, as expressed in the *proviso* contained in the 2d section above referred to constitutional ? " In these cases, as will be seen by reference to 20 Gratt. 31, it was held by the Supreme Court of Appeals of Virginia as follows : " 1. The Judges of the Court of Appeals who were in office under military appointment when the State was restored to the Union, holding over and continuing to exercise their office, their judgments and decrees are valid and binding. 2. The *proviso* to section 2 of the Act of March 5, 1870, called the " en-

abling act," which authorized the Court of Appeals organized under the present Constitution to rehear and affirm or reverse the decrees made by the military Judges at its term commencing the 11th of January, 1870, the term being ended before the passage of the act, is unconstitutional : and the present Court has no authority to rehear such cases.   3.  A case decided by the Supreme Court of Appeals at one term of the Court, at which no motion is made to rehear it, cannot be reheard at a subsequent term of the Court."

From what has preceeded I think it may be safely and truly declared, that the Supreme Court of Appeals of Virginia by a train of decisions extending back for many years have long since settled the principle that a case decided by the Supreme Court of Appeals at one term of the Court, at which no motion or petition is made or filed to rehear it, cannot be reheard by that court upon its merits for the correction of errors of judgment in the final decree or judgment of the Appellate Court at the former term.   This it seems is in accordance with the common law rule.   It would be dangerous in the extreme to concede that a Supreme Court of Appeals possesses the inherent right and power at its pleasure to rehear a cause upon its merits at any time after the end of the term, at which it renders its final judgment or decree, for the purpose of correcting errors of judgment therein.   Comment upon the danger of such a power unlimited and unrestrained by law is unnecessary.   If such court possesses such inherent power, there is no reasonable limit, in the absence of statute law upon the subject, to the time when it may be exercised, and no reasonably safe calculation could be made as to when litigation would end in any cause as to any subject, ever after the case has been solemnly heard and decided by the Court of last resort.

The rule thus settled in Virginia is the rule and law with us, and has been recognized in the cases decided by this Court (to which I have referred) in the absence of

*margin notes:*

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*

Syllabus 1.

43

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

Syllabus 3.

statute law providing otherwise. But I understand the Supreme Court of Appeals of Virginia to hold substantially in the case of *Griffin's ex'r* v. *Cunningham,* 20 Gratt. 31, that an act of the Legislature authorizing the Supreme Court of Appeals to rehear, reverse or set aside its final judgments or decrees, passed after the end of the term at which such judgments or decrees were made and entered, is unconstitutional and void for the reasons stated in the opinion of Judge Christian and others of the judges whose opinions appear in the report. Whether this decision as to the constitutionality of such an act is correct or not, I do not now express any opinion, as according to the view I take of this case the question does not fairly arise here. Still I feel bound to admit there are some strong reasons in support of the conclusions and decision of the Virginia Supreme Court of Appeals last cited.

We have also seen that this Court has decided that the clause of the Constitution requiring the Supreme Court of Appeals to "decide every point arising upon the record; and give its reasons therefor in writing," is directory and does not affect the common law doctrine of *res judicata.* This leads me now to consider what is the meaning of the said act of the Legislature approved March 8, 1879, which took effect from the passage thereof, and which I have before recited. It must be admitted that the title to the act is sufficiently broad to cover an act to authorize this Court to rehear and review its judgments and decrees in causes for errors of judgment, upon their merits made and entered at the special term thereof held in the city of Wheeling in the months of October, November and December, 1878, which special term had ended some time prior to the passage of said act, if such an act were constitutional ; but at the same time it is clear that the title to the said act is not inappropriate thereto as we interpret the meaning of the act.

The bill was introduced in the Senate, and is Senate bill No. 3, and will be found in the Senate Journal and

Bills of 1879, and contains a section which is not found in the bill as it passed and was approved. The section to which I allude is section 2, as it appears in the original bill, and may upon construction be considered of wider scope and range than the 1st section, which is in the bill, as it passed the Legislature; though it is unnecessary to decide that question now and it is not now decided. As we have seen the language of the body of the act as it passed is, that " the Supreme Court of Appeals at the regular term to be held in the city of Wheeling in June, 1879, may review and rehear any cases decided by said Court at the special term held in the city of Wheeling in the months of October, November and December, 1878, *so far as to allow the correction of any clerical error in any decree or judgment pronounced by said Court, or where the Court on its own motion, may desire to rehear and correct such decree or judgment.* But no argument, either written, printed or oral should be heard, unless requested by the Court." The act is retrospective and retroactive upon judgments and decrees of the Court at a term ended at the passage thereof. Does it mean or intend to confer any power upon the Court other than to correct mere clerical errors in its judgments and decrees pronounced and entered? Upon mature consideration I humbly think not. The first clause of this act authorizes the Court to review and rehear any cases, &c., " so far as to allow the correction of any clerical error in any decree or judgment pronounced by said Court." This clause evidently means to authorize the Court upon petition, &c., to correct clerical errors in any such decree or judgment at this term of the Court and nothing more. If this was not the only purpose of the Legislature by this clause, why use the words, " so far as to allow the correction of any clerical error in any decree or judgment pronounced by said Court," which evidently in the connection used were intended to qualify and restrict the power given to the Court to mere clerical errors? The next clause (which is separated from the former by a mere

*Margin notes:*
1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington *et al.*

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.
comma) is, " or where the Court on its own motion, may desire to rehear and correct such decree or judgment." Now it seems to me that this clause simply means, when read in connection with that immediately preceding, that where the Court on its own motion may desire to rehear and correct such decree or judgment, it may do so, so far as to correct any clerical error in such decree or judgment. It seems to me that the conclusion is unavoidable, that the clause of the act last quoted was intended to confer upon the Court the power to correct such decree or judgment for clerical error or errors only upon its own motion if it desired to do so in the absence of a petition, &c., as it is authorized to correct upon petition, &c., to the Court for that purpose under the first clause of the act; and that if it had been the purpose and intent of the Legislature to authorize this Court to review and rehear upon their merits on its own motion or otherwise cases heard and decided by it at the special term thereof, 1878, in the act mentioned, and correct the same for errors of judgment and not mere clerical errors, considering the greatness of the power and the grave questions of a constitutional character connected therewith, that the Legislature would have so said in plain language, and would not have passed the act in its present form.

The case of *Garrison* v. *Myers*, 12 W. Va. 330, is not a case in point, because the error corrected there was a clerical error, and the court so states and shows in its decree, as appears at page 332. I did not sit in the last named case, because I was counsel in the original cause before I became a member of this Court; and it does not appear that the power of the Court to make the correction it did was discussed before the Court, or upon what ground it did so, further than that stated in the decree itself.

The case of *Byrne and wife* v. *Edmonds*, 23 Gratt. 200, I think is not in point, as is plain to my mind from reading the case and in the opinion of the Court as reported.

I would remark that the act provides for no notice,

1879
June Term.

Hall & Smith
v.
Bank of Virginia
and
Renick
v.
Ludington et al.

Syllabus 2.

which it seems to me it would have done, if the Legislature had intended to confer the grave power upon the Court to review and rehear causes decided by it and correct the same for errors of judgment therein.

Upon the whole it seems to me after mature consideration, that the Legislature did not mean or intend by the act in question to confer upon this Court authority to review and rehear upon their merits any cases decided by the Court at the special term in said act mentioned, and to correct its judgments and decrees wherein there was error of judgment of the Court, if the Court found any such error of judgment therein; but that the true purpose and intent of the Legislature in the passage of the said act was to authorize the Court, so far as the Legislature had authority, to correct clerical errors in its judgments and decrees pronounced at said special term.

It is proper to remark also, that no notice appears to have been given to the opposite party or parties of the filing, or purpose to file, either of the said petitions; and there has been no appearance to them by the opposite parties before us.

John W. Harris counsel for Joel McPherson has brought to our attention the judgment rendered by this Court for costs against McPherson in the said case of *Renick* v. *Ludington et al.*, and has cited us to said act of the Legislature. In rendering judgment against Mc-Pherson for costs the Court did not commit a clerical error. It was the judgment of the Court that McPherson should pay the costs, as appears by the opinion of the Court filed at the time the judgment was rendered; and if there was error in this respect, it was not clerical in this case. The errors alleged in each of the said petitions herein first mentioned in the decrees aforesaid, if any such in fact exist, it seems to me clearly, are not clerical errors, but errors of judgment of the Court, and such as this Court has no power or authority now to consider, or correct under the common law or said act of the Legislature. In so far as there is an apparent inconsistency or

Syllabus 4.

conflict between provisions of the decree of the 21st day of June, 1876, and that of the 25th day of June, 1877, in the case of *Renick* v. *Ludington et al.*, the latter, it seems to me, must be taken as a modification of the former by the court below, and that both decrees being before the Appellate Court at the same time and considered and acted upon by this Court together, this Court, in so far as it affirmed said decrees, affirmed the former as modified by the latter. The said decrees, so far as affirmed by this Court, were affirmed by one act, one decree and at the same time; and it seems to me that it must be considered in this case that the said decree of the 21st day of June, 1876, so far as affirmed by this Court, was affirmed in connection with said decree of the 25th of June, 1877, and affirmed as modified by said last named decree.

I have deemed it proper to consider these two petitions together, as in my judgment the subject matter of each of them and their respective prayers involve in a great degree the same principles. I have not stated the alleged errors specifically; but the petitions which are on file show them. I have however stated that the alleged errors, if such there be, are not clerical in my judgment. But if such errors exist, they are errors of judgment upon the merits of the case, and such as that this Court, under the law, as I understand it, has no power now to correct. In the view I have hereinbefore expressed I do not mean or intend to express or intimate any opinion as to the effect and construction of the 35th section of article VIII of our present State Constitution, or to express or even intimate an opinion as to the legislation, or any part thereof, had and made under said 35th section with the view and purpose of carrying said section into effect in whole or in part. Questions arising under said 35th section and the legislation thereunder may and doubtless will involve the decision and consideration of principles materially different from those considered or intended to be decided in these cases. None would or

could regret the commission of an error of judgment upon matters of fact or law prejudicial to the interest or rights of any person more than each and every member of this Court, and none would be willing to go further within the limits of duty and the law than each member of this Court to correct such error when discovered. But our official duty in this regard requires us in such matters to keep within the limits of the law as we understand it, as in all other cases. This duty we must perform, as we understand it, under the law, and in these cases as now presented we render that decision which it seems to us the law requires.

For the foregoing reasons the prayers of said petitioners are, and each of them is, overruled.

THE OTHER JUDGES CONCURRED.

PETITIONS DENIED.