## *In re* HOUSTON.

## *In re* GERYE.

*(Circuit Court, W. D. Missouri, W. D.   September 28, 1891.)*

CONSTITUTIONAL LAW—REGULATION OF INTERSTATE COMMERCE—PEDDLER.

Merchants engaged in business in Kansas employed citizens of that state as agents to solicit purchases in Missouri. Such agents were furnished with samples of the goods to be sold, and sent the orders obtained by them to their employers, who thereupon shipped to the agents the goods ordered, and the agents delivered them to the purchasers. One such agent, however, offered to sell and deliver to one person, and did sell to another, a single article, one of his samples, and delivered it immediately to the purchaser, without taking an order therefor on his employers *Held*, that this did not constitute him a peddler, within the statute of Missouri de-

claring "whoever shall deal in the selling of" goods, with certain exceptions, "by going from place to place to sell the same," to be a peddler, and making punishable such peddling without a license; and that his arrest and imprisonment for violation of that statute were in contravention of Const. U. S. art. 1, § 8, cl. 3, giving to congress alone the power to regulate commerce among the several states.

Petitions for Writ of *Habeas Corpus.*
*E. D. McKeever,* for petitioners.

PHILIPS, J. This is an application for the writ of *habeas corpus.* The parties make separate applications; but, as the cases involve the same questions of law, and arise out of substantially the same state of facts, they will be considered together.

Petitioners were arrested and imprisoned under proceedings instituted against them in a justice's court at the city of Nevada, Vernon county, in this state. The prosecution is predicated of an alleged violation of the state statute defining and regulating the rights and duties of peddlers. The charge is that the defendants were engaged in the act of peddling wares and merchandise in said city and county without having first taken out therefor a peddler's license. The facts, as developed on this hearing, are substantially as follows: The petitioners are citizens of the state of Kansas, and at the time of their arrest they were acting as agents for Price & Buck, merchants of the city of Topeka, state of Kansas, a firm engaged in a general mercantile business at Topeka, making a specialty, however, of the sale of clocks, silver-ware, and lace curtains. In the prosecution of their business, this firm employed a large number of canvassers, throughout the country, extending into other states. These canvassers were furnished with samples of the goods to be sold, which they carried around with them from house to house, soliciting custom. The terms of sale were one-sixth in cash, the remainder to be paid in five equal monthly installments. The first payment was made to the solicitor, which represented the amount of his commission. An order was then sent in by the agent, or drummer, to the house at Topeka for the article contracted for, upon which the firm shipped to the agent, who delivered to the purchaser, and the remaining payments were collected by a collecting agent of the firm. In the case of the petitioner Houston, the evidence does not show that he ever made sale otherwise than according to the custom above indicated. In the case of the petitioner Gerye, the evidence shows that, while he pursued a like course, there was one exception, when he offered to sell to a lady the sample clock carried around by him. She declining to take it, he went to a neighboring house, and made sale to the lady of the house, delivered the clock immediately to her, receiving from her the first payment of one-sixth of the purchase price. The right of a non-resident merchant to thus employ agents to go beyond the limits of the state in which the merchant resides to solicit purchases, by taking orders on the house, to be filled, and the goods shipped into another state for delivery, without the goods being subject to a license tax of the state, or to an occupation tax on the solicitor, has been established, beyond further controversy, by decisions of the supreme court of the United States. *Robbins* v. *Taxing-*

*Dist.*, 120 U. S. 489, 7 Sup. Ct. Rep. 592; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 8 Sup. Ct. Rep. 1380; *Asher* v. *Texas*, 128 U. S. 129, 9 Sup. Ct. Rep. 1. The method of sending solicitors into another state for orders of sale, employing samples for exhibition, is one of the recognized lawful methods of carrying on trade between the different states; and if the local community where the solicitor thus goes may subject him to an occupation tax or a license fee, no matter by what name or under what disguise, whether as peddler or merchant, who shall limit the amount of such tax, to prevent actual prohibition? As said by the court in *Robbins* v. *Taxing-Dist.*, *supra:* "To say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly, and without due attention to the truth of things."

There was no question made by respondent at the hearing of this case that, if the conduct of the petitioners was strictly limited or confined to the mere solicitation of orders, in the manner stated, the acts of petitioners are within the protection of the commerce clause of the federal constitution. But the principal contention was and is that the act of Gerye, in making sale of one clock without taking an order therefor on the house, according to the instruction of the house and the custom of the agents, brings his case within the definition of a peddler, and subjects him to the operation of the state law. The state statute thus defines a peddler:

"Whoever shall deal in the selling of patents, patent-rights, patent or other medicine, lightning-rods, goods, wares, or merchandise, except books, charts, maps, and stationery, by going from place to place to sell the same, is declared to be a peddler."

It is to be observed that it is essential under this statute to constitute a peddler that he should "deal in the selling" of the given article. The question, therefore, presents itself, whether the single instance of Gerye delivering the clock which he carried as a sample, without first sending in an order to the Topeka house, and awaiting the shipment of its counterpart, constituted him a peddler under this statute, so as to deprive him of the protection which the constitution gives to interstate commerce. At first impression it seems plausible that one offer to sell and deliver, and then one sale, followed by delivery, would constitute a dealer. As applied to the statute regulating the sale of liquors under the federal revenue law, such acts would be sufficient to constitute the vendor a retail liquor dealer. But the rule of construction, under like state statutes, is quite different. The language of ENDICOTT, J., in *Com.* v. *Farnum*, 114 Mass. 267–271, in construing a like provision, and discussing a like state of facts, may well be applied here:

"He was an agent soliciting orders, and a carrier delivering machines ordered. He made no direct sales himself. He did not carry and expose goods for sale, within the mischief the statute is intended to prevent. The article he carried was a sample of that which he proposed the purchaser should buy of the company. The fact that he occasionally delivered the sample machine to a purchaser desirous of obtaining one immediately cannot so change the character of his business as to bring it within the statute, nor did the fact that he sold one attachment, and one tuck-marker, capable of being attached, make him

liable; it distinctly appearing that it was not his practice to make such sales. The question is to be determined on the general character and scope of his business. If this does not bring him within the statute, he is not liable for single sales of particular articles, such sales being exceptional, and not in the course of his ordinary employment."

See, also, *City of Kansas* v. *Collins,* 34 Kan. 434–437, 8 Pac. Rep. 865, and cases cited.

Such seems to be the well-settled rule of construction of similar statutes. To hold that such sporadic, casual sale fixes upon the party the office of a dealer does not obtain outside of the practice under the revenue laws, which are designedly rigid, and controlled by the letter of the act. The cases of *State* v. *Emert,* 103 Mo. 241, 15 S. W. Rep. 81, and *Hynes* v. *Briggs,* 41 Fed. Rep. 468, are not in conflict with the views above expressed, when properly distinguished. The agreed statement of facts on which the former case was submitted is not as clear as it ought to have been to present an exact point for decision. While it is true the facts stated indicate that the agent was soliciting orders for the non-resident manufacturer, and that in traveling around from house to house he did sell out of his wagon one sewing-machine, it perhaps, in justice to the opinion of the court, ought not to be said that it held such single sale constituted the vendor a peddler under the state statute. The holding would be singular in that aspect, as it would be in conflict with the current of state authorities construing similar statutes. The third paragraph of the agreed statement of facts recites that the property "was forwarded to this state by said company, and delivered to defendant, as its agent, for sale on its account;" from which it is inferable that it was not being used merely as a sample, but was sent by the manufacturer to be sold, and, therefore, was sold in the usual course of defendant's trade. It is not necessary that all that is said in that opinion should receive assent or any part disapproval to warrant the conclusion reached on the facts at bar. In the case of *Hynes* v. *Briggs,* the facts were that the non-resident merchant and manufacturer, while employing agents as canvassers, shipped into the state of Arkansas large consignments of said goods, which were stored in a warehouse, and sales made by its solicitors were filled from this store-house, and were not completed by shipments from without on orders sent in by the solicitor. Such goods were held to have become so far mingled with the common property of the *situs* as to become liable to state regulation and police, and subject to the license tax, if otherwise constitutional as a state enactment. Whether it will be maintained by the supreme court that a solicitor for a non-resident merchant or manufacturer, who limits his operations to merely taking orders on such non-resident, who supplies the goods from a *provisional* store-house established within the state where such orders are taken, would thereby become liable to a license fee imposed by the state, is yet an open question. It is sufficient for the purpose of the case at hand to say that Mr. Justice BRADLEY, in *Robbins* v. *Taxing-Dist., supra,* suggested that it could not be entertained that the non-resident merchant or manufacturer, in order to avail himself of the right of free interstate

commerce guarantied by the constitution, should be driven to the "silly and ruinous proceeding" of procuring a store-room, and shipping in his goods, before he could reasonably anticipate a demand for them; and that, therefore, the means of effecting such sales through the agency of "drummers" taking orders in advance are permissible, and the right is not to be interfered with nor hampered by subjecting the solicitor to the imposition of a state license fee, or tax in other form. This view was sustained by the majority opinion, and reaffirmed in *Asher* v. *Texas*, 128 U. S. 129, 9 Sup. Ct. Rep. 1. The latest holding must be the law for the government of this court, until reversed by the court of last resort.

It results that, the petitioners being restrained of their liberty in contravention of the third clause of section 8, art. 1, of the federal constitution, which gives to congress alone the power to regulate commerce among the several states, they are entitled to be discharged therefrom.

It is accordingly so ordered.