### In re LANGFORD.

(Circuit Court, D. South Carolina. August 21, 1893.)

1. INTOXICATING LIQUORS—EFFECT OF WILSON ACT.
   The Wilson act (26 Stat. 313) puts an imported package of intoxicating liquors, whether in its original shape or otherwise, under the police power of the state "upon arrival in such state," precisely as other intoxicating liquor in the state is subject to the police power.

2. SAME—MEANING OF "UPON ARRIVAL."
   The expression, "upon arrival in such state," means neither on entrance within the borders of the state, nor on delivery to the consignee, but on reaching its destination.

3. SAME—DISPENSARY ACT—CONSTITUTIONALITY—POLICE POWER.
   The South Carolina dispensary act, (approved December 24, 1892,) § 25, subsecs. 1, 3, 4, require knowledge on the part of a person charged that the intoxicating liquor was intended for sale; but subdivision 2 makes it a criminal offense for any servant, agent, or employe of a special class of common carriers to remove from a car any intoxicating liquor whatever, without any qualification as to knowledge that it is intoxicating liquor, or that it is intended for sale, and without attaching any criminality to the person receiving the liquor from the carrier. Held, that subdivision 2 discriminated, in singling out one class from the whole community for punishment, and was not within the exercise of the police power, under Const. S. C. art. 1, § 12, which provides that no person shall be liable to any other punishment for any offense, or be subjected in law to any other restraints or disqualifications in regard to any personal rights, than such as are laid on others under like circumstances.

4. SAME—VALIDITY—INTERSTATE COMMERCE.
   The South Carolina dispensary act, § 25, subsec. 2, not being an exercise of police power, the section contravenes the interstate commerce act and the fourteenth amendment, and is void.

5. COURTS—STATE AND FEDERAL—COMITY.
   Where a federal court has jurisdiction in a case of great moment to the parties and to the public, and can speedily hear the case, and give the desired relief, the case should not be left to the determination of a state court because of the comity between the state and federal courts.

Application by D. M. Langford for discharge from custody on return of writ of habeas corpus. Granted.

Cothran, Cothran & Wells, for petitioner.
D. A. Townsend, Atty. Gen., and Mr. Ansel, for respondent.

SIMONTON, District Judge. This case comes up upon petition for habeas corpus, the writ, and the return thereto. The peti-

tion sets forth that the petitioner, a citizen of the United States and of the state of South Carolina, is the agent of the receivers of the Richmond & Danville Railroad at Prosperity, a town in South Carolina; that on the 14th of July, 1893, as such agent, he received by a regular train, over a railroad of the receivers, a keg of whisky consigned to A. A. Singley, a resident of said town, which keg, as shown by the way bill, was shipped from Pleasant Ridge, in North Carolina, to said town in South Carolina; that he delivered the keg to the consignee, and that soon thereafter he was arrested under a warrant issued by a trial justice of said state, charged with violating the provisions of an act of the legislature of South Carolina entitled "An act to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state except as herein provided;" and that he is yet in custody. The petition further shows that the delivery by him of the keg of whisky, as aforesaid, was made by him under and pursuant to the laws regulating commerce between states, and that the act of the legislature of the state under which he has been arrested and is held in custody is in conflict with said interstate commerce law, and is null and void, so that his arrest is illegal. He prays his discharge from arrest. The return of the sheriff having him in custody admits that the petitioner is held for violation of the said act, by reason of the delivery of the keg of whisky as stated, and denies that the act is in conflict with the interstate commerce law, and, on the contrary, avers that it comes within the provisions of the act of congress approved August 8, 1890, commonly known as the "Wilson Act." It further avers that the petitioner is in custody for trial in the courts of the state for a crime against the state, and that this court, in comity to the courts of the state, ought not to interfere herein until the said state courts have first passed upon the question involved in the case.

In Cantini v. Tillman, 54 Fed. Rep. 970, the alleged conflict of the dispensary act with the constitution and laws of the United States was discussed, and the validity of the act was sustained. The opinion, however, expressly reserved any question as to the validity of this twenty-fifth section. The case at bar raises the issue on this section. The petitioner is in custody under the charge of violating section 25 of the act of the legislature referred to. This section is in these words:

"No person shall knowingly bring into this state, or knowingly transport from place to place within this state, by wagon, cart, or other vehicle, or by any other means or mode of carriage, any intoxicating liquors, with the intent to sell the same in this state in violation of law, or with intent that the same shall be sold by any person, or to aid any other person in such sale, under a penalty of $500, and costs for each offense, and in addition thereto shall be imprisoned in the county jail for one year. In default of payment of said fine and costs, the party shall suffer an additional imprisonment of one year. Any servant, agent, or employe of any railroad corporation, or of any express company, or of any persons, corporations, or associations doing business in this state as common carriers, who shall remove any intoxicating liquors from any railroad car, vessel, or other vehicle of transportation, at

any place other than the usual and established stations, wharves, depots, or places of business of such common carriers within some incorporated city or town, where there is a dispensary, or who shall aid in or consent to such removal, shall be subject to a penalty of $50, and imprisonment for thirty days for every such offense: provided, that said penalty shall not apply to any liquor in transit, when changed from car to car to facilitate transportation. All such liquor intended for unlawful sale in this state may be seized in transit, and proceeded against as if it were unlawfully kept and deposited in any place. And any steamboat, sailing vessel, railroad, express company, or other corporation, knowingly transporting or bringing such liquor into the state, shall be punished upon conviction by a fine of five hundred dollars and costs for each offense. Knowledge on the part of ·any authorized agent of such company shall be deemed knowledge of the company."

There can be no doubt that but for the passage of the Wilson act the provisions of this section would be in conflict with the interstate commerce law, and void. Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. Rep. 689, 1062; Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. Rep. 681. This last case induced the passage of the Wilson act. Caldwell, J., in Re Van Vliet, 43 Fed. Rep. 766. The Wilson act is as follows:

"An act to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases.

"That all fermented, distilled, or other intoxicating liquors or liquids, transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

What were the interstate commerce regulations which were in existence at the passage of this act, from which intoxicating liquors were by it exempted? This question is answered in the two cases quoted above. The first of these cases had declared that under the interstate commerce regulations the right to import intoxicating liquors into any state existed, and the second case declares that this right of importation involved the right to the importer to sell so long as the liquor remained in the original package; that therefore the police power of the state could not prevent the importation except under restrictions, nor forbid the sale of the importation by the importer so long as it remained in the original package. The Wilson act put the imported package, whether in its original shape or otherwise, under the police power of the state, upon its arrival in such state, precisely as other intoxicating liquor in the state is subject to such police power.

What is the meaning of the term "upon its arrival?" The respondent insists that by this term is meant its entrance within the borders of the state. Thus it is a prohibition of the importation of intoxicating liquors into this state. That does not seem to be within the scope of the Wilson act. It provides "for all fermented, distilled or other intoxicating liquors or liquids transported into any state," and declares them not exempt from the operation of the police laws by reason of being introduced therein in original pack-

ages or otherwise. It is clear that the Wilson act deals with liquors after their introduction within the state, and therefore the word "arrival" cannot be construed to be at the border of the state. Goods "arrive" when they reach their destination. In the term is involved a cessation of the transit. Goods shipped from Virginia to Alabama cannot be said to arrive in North Carolina, South Carolina, or Georgia. They "arrive" when they reach their destination in Alabama.

On the other hand, the petitioner contends that the Wilson act does not subject the imported package to the operation of the police regulations of the state until the whole duty of the carrier has been performed; that the carrier does not perform his whole duty until the goods are delivered; that when the act uses the expression, "upon arrival in such state," it means when the delivery by the carrier has been made. This position depends upon the construction to be given to this word "arrival." Words used in a statute, not technical in their character, must be taken in their ordinary signification. Persons and goods arrive when they reach their destination. It is proper to say that, after a man arrives at a city, he goes to his home therein, or to the home of a friend, or to his hotel. So goods, after "arrival" at their destination, are either delivered to the consignee after notice of arrival, or are held until the freight is paid, or C. O. D., or are stored. The money for the freight or the cash delivery cannot be demanded until the goods have arrived, and because of such arrival. If the freight be not paid, or if the cash on delivery be not produced, or the consignee be not known or do not appear, these cannot in any way affect the arrival of the goods, or permit us to say that they have not arrived. The delivery of goods is not an essential element of their arrival at their destination. Compare Benj. Sales, pp. 759, 760, §§ 873, 874. The same conclusion would appear in using the analogy of stoppage in transitu. This right of stoppage ends upon the delivery into possession of the consignor. Says Benj. Sales, p. 1070, § 1245: "The vendor's right of stoppage in transitu is very frequently not ended on their arrival at their ultimate destination, because of his retention of the property in them."

The package in question, upon its arrival at Prosperity, in South Carolina, came within the exercise of the police power of the state.

The next question is, is this twenty-fifth section of the act of assembly, December, 1892, a lawful exercise of the police power? Examining this section we find that it contains four distinct subdivisions: (1) No person shall knowingly bring into this state, or knowingly transport from place to place within the state, by wagon, cart, or other vehicle, or by any other means or mode of carriage, any intoxicating liquors, with intent to sell the same in this state in violation of law, or with intent that the same shall be sold by any other person, or aid any other person in such sale. (2) Any servant, agent, or employe of any railroad corporation, or of any express company, or of any persons, corporations, or associations doing business in this state as common carriers, who shall remove any intoxicating

liquors from any railroad car, vessel, or other vehicle for transportation, at any place other than the usual and established stations, wharves, depots, or places of business of such common carriers, within some incorporated city or town where there is a dispensary, or who shall aid in or consent to such removal, etc. (3) All such liquor intended for unlawful sale in this state may be seized in transit, and proceeded against as if it were deposited in any place. (4) Any steamboat, sailing vessel, railroad, express company, or other corporation knowingly transporting or bringing such liquor into the state, shall be punished, etc. Knowledge on the part of any authorized agent of such company shall be deemed knowledge of the company.

Thus, in every subdivision but the second above set forth, there must exist on the part of the person charged the knowledge that the intoxicating liquors were intended for sale. The liquors to be seized must be intended for sale. No private carrier or other person can offend this section if he does not know that the liquor is brought in for sale. The liquor cannot be seized in transit unless it is intended for sale. The company transporting the liquor into the state is punishable only when its authorized agent knows that it was intended for sale. This is in harmony with all the other parts of the act, the purport and purpose of which is to regulate the sale of intoxicating liquors. This is plainly shown in the first section:

"The manufacture, sale, barter, or exchange, or the keeping or offering for sale of any spirituous, malt, vinous, fermented or other intoxicating liquor or compound or mixtures thereof by whatever name called, which will produce intoxication by any person, business, firm, corporation or association, shall be regulated and conducted as provided in this act."

More than this, no criminality is attached to the person receiving from the common carrier the liquors mentioned in the second subdivision of this twenty-fifth section. But this second subdivision makes it a criminal offense for one special class of persons, servants, employes, and agents of a special class of common carriers, to remove from the car, etc., any intoxicating liquor whatever, without any sort of qualification. No knowledge on the part of such servant, agent, or employe that it is intoxicating liquor is required. Nor does it make any difference whether the liquor be intended for sale, personal use, or consumption in any other way. None of the safeguards thrown around every other criminal offense exists. The only qualification is that the city or town in which the package is has no dispensary. This is discrimination,—the separation of a class from the whole community, and singling it out for prosecution and punishment. It is the class on whom interstate commerce largely depends, without whom it cannot be conducted. And if we are permitted to infer from the words of the act the motive for this discrimination, the natural inference would be that it is intended to prevent any possible chance of competition with dispensaries elsewhere established; an intention sought to be perfected, not by punishing all persons connected with the act,—the importer and

the consumer,—but confining the crime and the punishment to this one class; creating for this special class a new crime. If this be assumed to have been done in the exercise of the police power, it will be difficult to sustain it. The Wilson act created no new power in the states. It professed to do no more than to limit the regulations of interstate commerce. But the most broad and liberal construction of the act would not permit a state, under the guise of the police power, to single out and punish the agents of interstate commerce for a crime specially created for them, in the teeth of the fourteenth amendment to the constitution of the United States.

It is extremely difficult, if not impossible, to give an exact definition of, and to describe the limits of, the police power. It is clear, however, that the legislature of a state cannot assume the exercise of the police power in a way forbidden by the constitution of the state. The constitution of South Carolina, (article 1, § 12,) provides "no person shall * * * be liable to any other punishment for any offense, or be subjected in law to any other restraints or disqualifications in regard to any personal rights than such as are laid upon others under like circumstances." This limits the power of the legislature, and prevents this provision of the act of 1892, known as the "Dispensary Act," from being an exercise of the police power. This being so, the provisions of the twenty-fifth section under this act contravene the interstate commerce law and the fourteenth amendment, (Leeper v. Texas, 139 U. S. 463, 11 Sup. Ct. Rep. 577; Missouri v. Lewis, 101 U. S. 22,) and are null and void. The arrest of the petitioner, based on these provisions, is void.

The return suggests that comity between the courts should induce this court to hold its hand, and leave the determination of the questions involved in this case to the state courts. It is the duty of a judge, when relief is sought before him in a matter within his jurisdiction, speedily to hear the plaint, and, if the party is entitled to the relief, to give it. He cannot shift from his shoulders the responsibilities of his judicial function, and impose them upon another. Strong as the temptation is, and agreeable as it would be, to do so, he cannot do it without loss of self respect. Besides this, both parties to this controversy desire a speedy solution of it. The public interest demands that the legal questions arising in, we may say impeding, this grave and interesting experiment of the dispensary act, be shortly settled. An appeal from this court lies directly to the supreme court. A final decree of the tribunal of last resort is very near at hand. It is ordered that the defendant be released from custody.