Ex parte JERVEY et al.

(Circuit Court, D. South Carolina. March 12, 1895.)

1. CONSTITUTIONAL LAW — INTERSTATE COMMERCE — CARRYING LIQUOR INTO A STATE.

The provision of the South Carolina "Dispensary Law" (section 33) forbidding any person to bring liquors into the state, except as provided in that act, under penalty of fine and imprisonment, is void, as an interference with interstate commerce, in so far as it is sought to be applied to persons who bring liquors into a port of a state, without attempting to unload them from the vessel.

2. SAME—EFFECT OF THE WILSON ACT.

The Wilson act, passed by congress in August, 1890, merely operates to subject liquors brought into a state to the police power thereof, whether in the original packages or not, and it gives the state no authority to impose penalties upon persons who bring liquors into a port of the state without attempting to unload them from the vessel.

3. STATE AND FEDERAL COURTS—COMITY—HABEAS CORPUS.

A federal court having before it, on writ of habeas corpus, persons arrested under a state law alleged to be in contravention of the constitution of the United States, will not feel required, on the ground of comity, to remand them to the state courts, when the circumstances are such that delay in obtaining a decision upon the validity of the law would cause great injury to commerce. Minnesota v. Barber, 10 Sup. Ct. 862, 136 U. S. 313, and In re Van Vliet, 43 Fed. 764, followed.

This was an application for a writ of habeas corpus to procure the release of J. E. V. Jervey, Sr., J. E. V. Jervey, Jr., and Henry Gardner, who are alleged to be held in custody by the sheriff of Charleston county, S. C., contrary to the laws and constitution of the United States.

Bryan & Bryan, for petitioners.

C. P. Townsend, Asst. Atty. Gen., and W. Gibbes Whaley, for respondent.

SIMONTON, Circuit Judge. Joseph E. V. Jervey, Sr., is the master, and the other petitioners constituted the crew of the schooner Carolina, a vessel of the United States, duly licensed for

conducting a coasting trade between ports and cities in the states of North Carolina, Georgia, and South Carolina. In February last she was lying in the port of Savannah, and there took in a cargo consisting of 6 barrels marked "whisky" and 22 barrels marked "vinegar," shipped on her to be transported by sea to Charleston, S. C., and for which she was to receive freight $75. As far as appears, none of the petitioners had any ownership in any of the barrels or their contents, or any other interest in them except the freight for their carriage between these two ports. Immediately on the arrival of the Carolina alongside the wharf in Charleston, some time before daylight on 26th February, and before cargo was broken, these three men were arrested by the city police, and held in custody. On the same day a warrant was issued by George W. Rouse, Esq., a trial justice of the state, in these words:

"The State of South Carolina, Charleston County.

"Affidavit for Arrest Warrant.

"Personally appeared before me E. C. Beach, who, being duly sworn, says that in the state and county above named, at Charleston, S. C., about the 26th day of February, 1895, J. E. V. Jervey, Sr., J. E. V. Jervey, Jr., and Henry Gardner did unlawfully bring alcoholic liquors into this state, in violation of section 33 of the dispensary act, and that Sergt. Quin and Private McCaffrey are material witnesses for the state.                          E. C. Beach.

"Sworn to before me, this 26th day of February, 1895.
                                                "George W. Rouse, Trial Justice.

"South Carolina, Charleston County.

"Arrest Warrant.

"By George W. Rouse, Trial Justice, in the Court and State Above Named, to Any Sheriff or Constable E. C. Beach: Whereas, complaint has been made unto me by E. C. Beach that J. E. V. Jervey, Sr., and J. E. V. Jervey, Jr., and Henry Gardner did unlawfully bring into the state, in violation of section 33 of the dispensary act, alcoholic liquor, these are therefore to command you to apprehend the said J. E. V. Jervey, Sr., J. E. V. Jervey, Jr., and Henry Gardner, and to bring them before me to be dealt with according to law.

"Given under my hand and seal, at Charleston, this 26th day of February, 1895.                                           George W. Rouse, Trial Justice."

By virtue of this warrant, they were arrested, and put in custody. They gave bail, but were surrendered by their bail to the sheriff in whose custody they were when the petition was filed. The petitioners are in custody because they, master and crew of the schooner Carolina, transported in the schooner, for freight money, these barrels of whisky, from the port of Savannah, in the state of Georgia, to the port of Charleston, in this state. It is charged that in so doing they violated section 33 of the dispensary act of this state, in these words:

"No person, except as provided in this act, shall bring into this state, or transport from place to place within this state, by wagon, cart, or other vehicle, or by any other means or mode of carriage, any liquor or liquids containing alcohol, under a penalty of one hundred dollars or imprisonment for thirty days for each offence, upon conviction thereof, as for a misdemeanor."

The petitioners allege that this section of the dispensary law, so far as it is sought to apply it to them, is an attempt to regulate commerce between the states, and is in conflict with the constitution and laws of the United States, and therefore null and void.

The issue thus presented is one cognizable in this court. "Under the provisions of sections 751 to 753 of the Revised Statutes of the United States, the courts of the United States and their judges have jurisdiction upon a writ of habeas corpus to inquire into the cause of the imprisonment of the petitioner; and if, upon such inquiry, he is found to be in custody for an act done or omitted in pursuance of a law of the United States, he is entitled to be discharged, no matter from whom or under what authority the process under which he is held may have issued, the constitution and laws of the United States made in pursuance thereof being the supreme law of the land." In re Neagle, 39 Fed. 833; Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734; Ex parte McCready, 1 Hughes, 598, Fed. Cas. No. 8,732; Electoral College of South Carolina, 1 Hughes, 571, 8 Fed. Cas. No. 4,336; Wildenhus' Case, 120 U. S. 1, 7 Sup. Ct. 385. Is the act of the legislature of South Carolina upon which this arrest was based in conflict with the constitution and laws of the United States? The act declares it a misdemeanor, punishable by fine or imprisonment, for any person, except as provided in the act, to bring into this state, by any means or mode of carriage, any liquor or liquids containing alcohol. Is it a regulation of commerce? It relates to liquids or liquor containing alcohol, —an article of commerce. "That ardent spirits, distilled liquors, ale and beer, are subjects of exchange, barter and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and decisions of the court, is not denied." Leisy v. Hardin, 135 U. S. 110, 10 Sup. Ct. 681. The dispensary act itself recognizes alcoholic liquors as the subject of interstate commerce, as it provides for their transportation; and, when imported, it recognizes them as subjects of exchange, barter, and traffic, for it provides elaborate machinery for the sale of them to the people of the state. This being so, the act does not forbid absolutely the importation of these liquors or liquids, but forbids their importation, "except as provided in this act." The provision, therefore, is clearly a regulation of commerce. "Commerce among the states consists of intercourse and traffic between their citizens, and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities." Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826. Transportation is essential to commerce, or rather is commerce itself, and every obstacle to it or burden laid on it by legislative authority is regulative. Railroad Co. v. Husen, 95 U. S., at page 470. See, also, Hall v. De Cuir, Id. 485. The power to regulate commerce is vested in congress, is complete in itself, and has no limitations other than those prescribed in the constitution. Gibbons v. Ogden, 9 Wheat. 1. This power so vested in congress is the power to prescribe rules by which it should be governed, that is to say, the conditions upon which it shall be conducted,—to determine when it shall be free, and when subject to duties or other exactions. Gloucester Ferry Co. v. Pennsylvania, supra. This power is exclusive. "All that portion of commerce with foreign

countries or between the states, which consists in the transportation, purchase, sale, and exchange of commodities is national in its character. Here there can, of necessity, be only one system or plan of regulation, and that congress alone can prescribe. Its nonaction with respect to any particular commodity or mode of transportation is a declaration of its purpose that the commerce in that commodity or by that means of transportation shall be free." County of Mobile v. Kimball, 102 U. S., at page 697.

The power to regulate commerce is so complete in itself, acknowledging no other limitations than those prescribed in the constitution, and so coextensive with the subject on which it acts, that it cannot be stopped at the external boundaries of a state; it enters into the interior. Leisy v. Hardin, 135 U. S., at page 111, 10 Sup. Ct. 681. The feebleness of the Confederacy, formed during the Revolution, over this subject, was one of the prime causes of the convention of 1789; and this provision of the constitution to meet this question, and to confer absolute and exclusive control over commerce in congress, was the result. The nature of this provision and its correction of the evils it was intended to cure require that a similar power should not exist in the states. County of Mobile v. Kimball, 102 U. S. 691. It is true that in certain cases in which the legislation of the state is not directed against commerce, but relates to the rights, duties, and obligations of citizens, and affects the operations of foreign and interstate commerce, or persons engaged in that commerce remotely and indirectly, such legislation does not conflict with the constitution. Sherlock v. Alling, 93 U. S. 100. But that is not this case. Here the prohibition is direct and complete. The case itself shows the distinction. The legislation condemned operated directly upon commerce, either by way of tax upon its business, license upon its pursuit in particular channels, or conditions for carrying it on. Page 102. We are not left to conviction or to the application of abstract principles. In Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062, the supreme court of the United States held that:

"The statute of the state of Iowa, forbidding, under penalty, common carriers, their agents or any person, to bring liquor into the state unless previously furnished with a certificate from the county auditor that the consignee was authorized to sell the same, was void as a regulation of interstate commerce."

This power to regulate interstate commerce being vested in congress, it is within the power of congress to permit its exercise in whole or in part by the states. In sections 4278 and 4279 of the Revised Statutes of the United States, relating to nitro-glycerine and other explosives, congress gives directly to any state, territory, district, city, or town the right to prohibit the introduction of such substances into their limits for sale, use, or consumption therein. The legislation with regard to spirituous liquors and their relation to interstate commerce is in what is known as the "Wilson Act" (26 Stat. 313). To construe this act, we must ascertain the mischief it was intended to remedy. The right of the states under the police power to regulate, restrain, forbid the use, sale, and keeping of

intoxicating liquors within their own boundaries had been fully established by a long line of authorities. Boston Beer Co. v. Massachusetts, 97 U. S. 25; Foster v. Kansas, 112 U. S. 201, 5 Sup. Ct. 8, 97; Mugler v. Kansas, 123 U. S. 659, 8 Sup. Ct. 273; Crowley v. Christiensen, 137 U. S. 91, 11 Sup. Ct. 13. But the decisions of the same court had declared that sealed packages were not within the police power. Instances were of constant occurrence in which importers would carry into a state, whose laws forbade the sale of intoxicating liquors, sealed packages of convenient size, which were sold in that condition, protected under these decisions. Thus, the laws of the state were evaded and set at naught, and the humane design of the legislation was entirely defeated. Every effort to destroy this evil failed, and finally, in Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, the supreme court declared the law granting immunity to the sealed package. It was promulgated April 28, 1890. In August, 1890, congress met the decision with the Wilson bill, and in effect declared it inoperative for the future. These are the words of the act:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

It will be noted that the act deals only with the liquors transported into a state, and declares them subject to the police power, whether in the original package or not. This is the full extent of its operation. It gives the states no new power. In re Rahrer, 140 U. S. 545, 11 Sup. Ct. 865. It simply puts in the same character liquors made in or being in the state and imported liquors in sealed packages or otherwise. As it is expressed by Mr. Justice Miller in his work on the Constitution (page 676), after this act took effect (the Wilson act), "such liquors introduced into the state from another state, whether in original package or otherwise, became subject to the operation of its then existing laws, enacted in exercise of its police powers." The liquors must first be introduced into the state before these laws can operate. It is upon their arrival within the state—that is, when the transit terminates (In re Van Vliet, 43 Fed. 761)—that the police power can act; and up to and until that time the police power cannot act (In re Lanford, 57 Fed. 570).

The prisoners have been arrested for bringing liquors into the state. The undisputed facts are that the goods were shipped at the port of Savannah, Ga., for this port, on the schooner of which they are master and crew, at a stipulated freight for carriage by sea. This was an act of interstate commerce. Whenever a commodity has begun to move as an article of trade from one state to another, commerce in that commodity between the states has commenced. The Daniel Ball, 10 Wall. 557. It can make no difference that this was the first voyage of this schooner, and that she may

not have theretofore been engaged in the business of a common carrier. The law of interstate commerce affects every citizen of the United States. Its protection and its penalties weigh equally on all. It is also not disputed that, immediately on reaching the wharf, they were arrested and detained in custody by the city police, and afterwards held under the warrant produced here; that they did not land their cargo or any part of it; and that, when they were arrested, it was afloat. The transportation was not ended. They were actually engaged when arrested in interstate commerce. Their detention by the police was unlawful, and the warrant by which they were incarcerated is based on a provision of law in conflict with the constitution and law of the United States. It is wholly void.

The learned representatives of the attorney general pressed upon the court that it should hold its hand in deference of and in comity with the state court. The advice of the supreme court of the United States in Cook v. Hart, 146 U. S. 195, 13 Sup. Ct. 40, meets with the hearty sympathy and approval of this court. But in Re Frederich, 149 U. S. 70, 13 Sup. Ct. 793, that high tribunal recognizes that, under special facts and circumstances, it is the duty of this court to act, and not to remand the prisoner to the state courts. These facts occur in this case. The question involved in it affects the commerce of every port in the state. Delay would work irreparable mischief. Let the channels of trade become once diverted, and it may take the life of a generation to restore them. If it be accepted that the master and crew of any vessel arriving at any port in South Carolina may be arrested and imprisoned simply for carrying goods in the course of foreign or interstate commerce, and while engaged in such transportation, and that they would have no protection, no vessel would venture to touch at any of them. The dispensary law has become fixed in the legislation of the state of South Carolina. It is for the interest of all her citizens that it be settled, and the constitutionality of all its parts ascertained, and that speedily. But were this matter to be remanded to the trial justice who issued the warrant, and the cause take its slow course through that tribunal, then on appeal to the circuit court, then to the state court, then to the supreme court of the state, and by writ of error to the supreme court of the United States, years may intervene before a final decision can be reached. The cause can go up from this court direct to the supreme court of the United States. Besides this, the conclusion reached is that this clause of the dispensary act, so far as it has been made to apply to these petitioners, is absolutely void. Following the example of Caldwell, J., in Re Van Vliet, 43 Fed. 764, and of the circuit court in Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, the case is retained here.

It is ordered that the prisoners be discharged from custody.