Ex parte MARTIN.

(Circuit Court, D. Oregon. June 20, 1910.)

No. 3,514.

1. HABEAS CORPUS (§ 70*)—FEDERAL COURT—STATE COURT PROCEEDINGS—STAY.

Rev. St. § 766 (U. S. Comp. St. 1901, p. 597), provides that pending habeas corpus proceedings, and until final judgment of discharge, any proceeding against the person so imprisoned or confined, or restrained of his liberty, in any state court or by or under the authority of any state for any matters so heard and determined under such writ, shall be deemed null and void. *Held*, that where, after the issuance of a writ of habeas corpus out of a federal court to review petitioner's arrest for violation of Laws Or. 1909, p. 386, regulating peddlers, he was tried and acquitted in the state court, such trial and acquittal were null and void.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 62; Dec Dig. § 70.*]

2. COURTS (§ 489*)—CONCURRENT JURISDICTION OF STATE AND FEDERAL COURTS.

State courts have concurrent original jurisdiction with federal courts to determine cases at law or in equity, arising under the Constitution or laws of the United States, or involving rights dependent on such Const' tution or laws.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1341, 1372–1374; Dec. Dig. § 489.*]

3. HABEAS CORPUS (§ 45*)—ISSUANCE—JURISDICTION—DISCRETION.

While the federal court has jurisdiction to issue a writ of habeas corpus to determine the jurisdiction of a state court to deprive a citizen of his liberty, whether such writ should be issued in the exercise of such jurisdiction is a matter to be determined in the exercise of a sound discretion in pursuance of law.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 1376–1385; Dec. Dig. § 45.*

Jurisdiction of federal courts, see note to In re Huse, 25 C. C. A. 4.]

4. HABEAS CORPUS (§ 45*)—FEDERAL COURTS—ISSUANCE—DISCRETION.

Where petitioner, a citizen and resident of Iowa, was arrested in Oregon for an alleged violation of Laws Or. 1909, p. 386, regulating and licensing peddlers, and claimed that such ordinance was invalid as violating the commerce clause of the federal Constitution, he was not entitled to a writ of habeas corpus issued out of the federal court, in the first instance, but should be required to resort to the state courts for relief, and, if unsuccessful, to apply ultimately for review by the Supreme Court of the United States on a writ of error.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 1376–1385; Dec. Dig. § 45.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Index

180 F.—14

Habeas corpus on petition of John Martin. Writ dismissed.

A. C. Lyon and Ralph R. Duniway, for petitioner.

George J. Cameron, Dist. Atty.

WOLVERTON, District Judge. John Martin, a citizen and resident of the state of Iowa, while engaged, as agent and representative of the Spaulding Manufacturing Company, also of Iowa, in taking orders for buggies manufactured by said company, with a view to selling such manufactured vehicles by sample, was, on the 27th day of May, 1909, complained against in the justice court, and arrested for violation of an act of the Legislative Assembly of the state of Oregon, entitled "An act to define and license and regulate peddlers and to provide a punishment for peddlers who peddle without a license," etc. Laws 1909, p. 386. Immediately after entering a plea of not guilty, and before trial was had, Martin applied to this court for a writ of habeas corpus to be released from his arrest; it being claimed that the act of the Legislative Assembly of the state of Oregon is in violation of the Constitution of the United States in three particulars, not necessary to specify, except that it is claimed especially that the said act is in contravention of the clause of the United States Constitution delegating to Congress the regulation of commerce among the several states. The writ of habeas corpus was allowed and issued on the 28th day of May, 1909. Subsequently, on the 5th of June, 1909, Martin was tried in the justice's court and acquitted. This fact of acquittal is set up by amended return of the officer who formerly had him in custody.

It is first insisted, by way of defense, that, Martin having been acquitted in the justice's court, this proceeding should be dismissed, for the reason that, by virtue of his acquittal and discharge, there is nothing left for controversy here. By section 766, Rev. St. (U. S. Comp. St. 1901, p. 597), relating to habeas corpus, it is provided that:

"Pending the proceedings or appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any state court, or by or under the authority of any state, for any matter so heard and determined, under such writ of habeas corpus, shall be deemed null and void."

The effect of this statute is to stay the hand of the state court, after a writ of habeas corpus has been issued by a federal court, until the cause thus brought upon the record is heard and determined. The state court is, after the issuance of such writ, wholly without authority to proceed further in the premises as against the petitioner. Such is the decision of the United States Supreme Court in the cases of In re Shibuya Jugiro, 140 U. S. 291, 294, 295, 11 Sup. Ct. 770, 35 L. Ed. 510; McKane v. Durston, 153 U. S. 684, 14 Sup. Ct. 913, 38 L. Ed. 867.

While in the present case it is urged that the discharge of the prisoner on trial was not contrary to his interest, yet it must be held that he was proceeded against by prosecuting him to trial, and, whatever was the result of the trial, the proceeding was contrary to the authority of Congress. Hence it must be held that the judgment of

the justice's court, so far as it affected this proceeding in any way, is utterly null and void.

This brings us to the question whether the writ of habeas corpus was properly issued. It is unquestioned that state courts of original jurisdiction, consistent with existing federal legislation, may determine cases at law or in equity arising under the Constitution or laws of the United States, or involving rights dependent upon such Constitution or laws. Upon these courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States, and laws made in pursuance thereof, whenever those rights are involved in proceedings before them. Robb v. Connolly, 111 U. S. 624, 637, 4 Sup. Ct. 544, 28 L. Ed. 542, reaffirmed in Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868. The leading case upon the question as to when a writ of habeas corpus should issue is that of Ex parte Royall, just cited. In that case it is declared that the court is endowed with a discretion in that particular. The discretion, of course, is one which should be governed by legal principles, and should be exercised in the furtherance of justice and right. Speaking of the relation existing between the state and national courts, and when the national courts should interfere with proceedings pending in the state courts, Mr. Justice Harlan has this to say:

"We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution."

And as to when the federal court may properly entertain the authority, the learned justice continues:

"When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or where, being a subject or citizen of a foreign state, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations—in such and like cases of urgency, involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of habeas corpus and discharged prisoners who were held in custody under state authority."

It was finally held in that case that the Circuit Court from which the appeal was taken had the discretion whether to entertain the writ or not, and that a proper exercise of that discretion would have been not to entertain the writ. It should be noted that the Circuit

Court dismissed the cause believing it had no jurisdiction thereof, while the Supreme Court held that it had undoubted jurisdiction, but affirmed the judgment of the lower court for a different reason, namely, that it had a discretion in the premises, and that a proper exercise of that discretion was to refuse to entertain the writ. The same question arose in a later case, namely, Cook v. Hart, 146 U. S. 183, 194, 13 Sup. Ct. 40, 36 L. Ed. 934, and Mr. Justice Brown, announcing the opinion of the court, says:

"We adhere to the views expressed in Ex parte Royall, 117 U. S. 241 [6 Sup. Ct. 734, 29 L. Ed. 868], and Ex parte Fonda, 117 U. S. 516 [6 Sup. Ct. 848, 29 L. Ed. 994], that, where a person is in custody under process from a state court of original jurisdiction for an alleged offense against the laws of that state, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court of the United States has a discretion whether it will discharge him in advance of his trial in the court in which he is indicted, although this discretion will be subordinated to any special circumstances requiring immediate action. While the federal courts have the power and may discharge the accused in advance of his trial, if he is restrained of his liberty in violation of the federal Constitution or laws, they are not bound to exercise such power even after a state court has finally acted upon the case, but may, in their discretion, require the accused to sue out his writ of error from the highest court of the state, or even from the Supreme Court of the United States. * * * We are unable to see in this case any such special circumstances as were suggested in the case of Ex parte Royall as rendering it proper for a federal court to interpose before the trial of the case in the state court. While the power to issue writs of habeas corpus to state courts which are proceeding in disregard of rights secured by the Constitution and laws of the United States may exist, the practice of exercising such power before the question has been raised or determined in the state court is one which ought not to be encouraged. The party charged waives no defect of jurisdiction by submitting to a trial of his case upon the merits and we think that comity demands that the state courts, under whose process he is held, and which are equally with the federal courts charged with the duty of protecting the accused in the enjoyment of his constitutional rights, should be appealed to in the first instance. Should such rights be denied, his remedy in the federal court will remain unimpaired."

And again, in Re Frederich, Petitioner, 149 U. S. 70, 77, 13 Sup. Ct. 793, 37 L. Ed. 653, the court says, after making reference to the Royall Case:

"We adhere to the views expressed in that case. It is certainly the better practice, in cases of this kind, to put the prisoner to his remedy by writ of error from this court, under section 709 of the Revised Statutes [U. S. Comp. St. 1901, p. 575], than to award him a writ of habeas corpus, for, under proceedings by writ of error, the validity of the judgment against him can be called in question, and the federal court left in a position to correct the wrong, if any, done the petitioner, and at the same time leave the state authorities in a position to deal with him thereafter, within the limits of proper authority, instead of discharging him by habeas corpus proceedings, and thereby depriving the state of the opportunity of asserting further jurisdiction over his person in respect to the crime with which he is charged. In some instances, as in Medley, Petitioner, 134 U. S. 160 [10 Sup. Ct. 384, 33 L. Ed. 835], the proceeding by habeas corpus has been entertained, although a writ of error could be prosecuted; but the general rule and better practice, in the absence of special facts and circumstances, is to require a prisoner who claims that the judgment of a state court violates his rights under the Constitution or laws of the United States to seek a review thereof by writ of error instead of resorting to the writ of habeas corpus."

So in Whitten v. Tomlinson, 160 U. S. 231, 242, 16 Sup. Ct. 297, 40 L. Ed. 406; the court, after citing several cases wherein the writ was entertained under the exception to the general rule, says:

"But, except in such peculiar and urgent cases, the courts of the United States will not discharge the prisoner by habeas corpus in advance of a final determination of his case in the courts of the state; and, even after such final determination in those courts, will generally leave the petitioner to the usual and orderly course of proceeding by writ of error from this court."

The doctrine was again strongly reaffirmed in Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 639. In that case the party applying for the writ was convicted in a municipal court, and after his conviction applied for the writ, which was issued. The Supreme Court reversed the judgment on the ground that the lower court should have exercised its discretion to the contrary. In Urquhart v. Brown, 205 U. S. 179, 181, 27 Sup. Ct. 459, 51 L. Ed. 760, a very recent case, the court yet adheres to the doctrine of the Royall Case. Mr. Justice Harlan announces the decision in the following language:

"It is the settled doctrine of this court that although the Circuit Courts of the United States, and the several justices and judges thereof, have authority, under existing statutes, to discharge, upon habeas corpus, one held in custody by state authority in violation of the Constitution or of any treaty or law of the United States, the court, justice, or judge has a discretion as to the time and mode in which the power so conferred shall be exerted; and that in view of the relations existing, under our system of government, between the judicial tribunals of the Union and of the several states, a federal court or a federal judge will not ordinarily interfere by habeas corpus with the regular course of procedure under state authority, but will leave the applicant for the writ of habeas corpus to exhaust the remedies afforded by the state for determining whether he is illegally restrained of his liberty. After the highest court of the state, competent under the state law to dispose of the matter, has finally acted, the case can be brought to this court for re-examination. The exceptional cases in which a federal court or judge may sometimes appropriately interfere by habeas corpus in advance of final action by the authorities of the state are those of great urgency that require to be promptly disposed of, such, for instance, as cases involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations."

To the same purpose are Reid v. Jones, 187 U. S. 153, 23 Sup. Ct. 89, 47 L. Ed. 116, and Pettibone v. Nichols, 203 U. S. 192, 27 Sup. Ct. 111, 51 L. Ed. 148.

From these authorities it will appear that the doctrine has become so well settled that there can be no further question about it. The federal court is vested with a discretion as to when, considering the attendant circumstances and conditions, the writ shall issue. That discretion, however, should be exercised in pursuance of law, and that justice and right may be subserved. There are a number of cases not unlike this on the facts, where the federal courts have, in the exercise of their discretion, entertained jurisdiction to try and determine the main issue. Among them may be cited In re Kimmel (D. C.) 41 Fed. 775; In re White (C. C.) 43 Fed. 913, 11 L. R. A. 284; In re Spain (C. C.) 47 Fed. 208, 14 L. R. A. 97; In re Houston (C. C.) 47 Fed. 539, 14 L. R. A. 719; and In re Nichols (C. C.) 48 Fed. 164. It will be noticed that in these cases reference is had to one or more of

the following cases, decided by the Supreme Court of the United States, as authority upon the main question; that is, touching whether an act like the one sought to be drawn in controversy here is in conflict with the commerce clause of the national Constitution: Robbins v. Shelby Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1, 32 L. Ed. 368; Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. 1383, 32 L. Ed. 311; Stoutenburgh v. Hennick, 129 U. S. 141, 9 Sup. Ct. 256, 32 L. Ed. 637; Pullman's Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613.

By reference to these cases, it will be seen that the first was prosecuted to the Supreme Court of the state and then to the federal Supreme Court on writ of error. The second was instituted in the state court by habeas corpus, then prosecuted to the highest court of appeal, and thence by writ of error to the United States Supreme Court. The third came by writ of error to the Supreme Court of Alabama. The fourth was a writ of error from the Supreme Court of the United States to the Supreme Court of the District of Columbia, and the fifth was error to the Supreme Court of Pennsylvania. All these cases, therefore, took their ordinary course through the state courts before the federal court entertained jurisdiction concerning them. Other cases may be alluded to, where the propriety of the exercise of the discretion of the court in entertaining jurisdiction at once, notwithstanding the causes were then pending in the state courts, was very plain, namely, In re Ah Jow (C. C.) 29 Fed. 181, Ex parte Kieffer (C. C.) 40 Fed. 399, and Ex parte Jervey (C. C.) 66 Fed. 957. In each of these cases, and others that might be cited of the same tenor, the question involved was of prime importance, and it was patent from first impression that a great wrong was being perpetrated by an enforcement of the state law complained against, and it was a matter of potent justice that the federal court should right the wrong summarily, as it might do through the instrumentality of the writ of habeas corpus.

The case at bar is not one of these. The defendant is the representative of a manufacturing institution in the state of Iowa, and the seeming purpose of invoking the writ is to present a test case and get a ruling of the court upon the validity of the state law. The test can and ought to be made in the state court, where the law was enacted. True, it is charged that the law is inimical to certain clauses of the federal Constitution, but this alone does not confer jurisdiction upon federal courts to take the matter out of the hands of the state court. It is just as much the duty of the state court to try these constitutional questions and safeguard the interests of suitors as it is that of the federal courts. So that it must be assumed that justice and right judgment will be meted out in the state courts as well as in the federal courts. This case affords an illustration, as it appears that the petitioner was subsequently tried in the state court and acquitted. And while the state court had no lawful authority to entertain the prosecution further, yet, if allowed to proceed there, it might, and in all probability would, be wholly unnecessary to resort to the federal courts. Relief, therefore, should be sought in the state courts, where

all the questions can be regularly tried, rather than that resort be had to the federal courts by summary proceeding that permits only of a greatly narrowed inquiry. Nor is the discretion of the court in exercising its power upon habeas corpus to be especially controlled by the fact that particular business interests may be affected. I quote the language of Mr. Justice Harlan in Minnesota v. Brundage, supra:

"We do not think that the exercise by a federal court of its own power upon habeas corpus to discharge one held in custody by the state authorities and charged with a violation of a state enactment should be materially controlled by any consideration of the extent of particular business interests that may be affected by a prosecution instituted in a state tribunal against him, or of the indirect effect of his detention in custody upon the rights of the general public."

This case falls well within the principle of that case, the Royall Case, and others above cited, and I am impelled to the conclusion that the better and sounder discretion will not permit of the entertainment of the writ. The court ought not to, and may not, shirk any duty imposed upon it. It must be remembered, furthermore, that the exercise of a proper discretion, having regard to the attendant facts and circumstances, is one of the most important duties it has to discharge.

These considerations lead to a dismissal of the writ, and it is so ordered.