## *In re* SHIBUYA JUGIRO, Petitioner.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 1632.　Argued and submitted April 10, 1891. — Decided May 11, 1891.

After final judgment entered here, affirming a judgment of a Circuit Court
of the United States denying an application for a writ of *habeas corpus*,
in favor of a person convicted of murder by a state court, and held in
custody by the authorities of the State, the restraint upon the jurisdic-
tion of the state court terminates, and that court has power to proceed
in the case without waiting for the mandate to be sent down from this
court to the Circuit Court.

*In re Wood, Petitioner, ante,* 278, affirmed and applied.

Several other grounds set forth in the application and stated in the opinion
raise no constitutional question.

THE case as stated by the court was as follows:

The appellant was convicted, December 3, 1889, by the
name of Schihiok Jugigo, in the Court of Oyer and Terminer
for the County of New York, State of New York, of the
crime of murder, and, on the 16th day of the same month,
was sentenced to suffer death. The sentence was stayed by
an appeal to the Court of Appeals of New York until Decem-
ber 1, 1890. The judgment was affirmed on the 8th of Octo-
ber, 1890, that court saying: "The record does not contain a
single exception, and we are unable to perceive any reason for
bringing the appeal, except to delay the execution of the
judgment. The evidence established beyond any doubt the
commission of the crime, and the charge of the judge was fair
and properly instructed the jury upon the law needful for
their guidance. There can be no pretence for saying that the
ends of justice require a new trial, and the judgment should
be affirmed." *People* v. *Jugigio,* [*Qu.* Jugiro,] 123 N. Y. 630.
Prior to such affirmance, namely, on the 9th of September,
1890, Jugiro filed in the Circuit Court of the United States
for the Southern District of New York a petition for a writ of
*habeas corpus* to inquire into the cause of his detention ; claim-

ing that the judgment and sentence were void under the Constitution of the United States. The writ was refused, and, upon appeal, the judgment of that court was affirmed here, November 24, 1890, upon the authority of *In re Kemmler*, 136 U. S. 436.

On the 1st day of December, 1890, — the mandate of this court not having then been issued, — Jugiro was arraigned before the Court of Oyer and Terminer, and required to show cause why a day should not be fixed for the infliction upon him of the punishment of death. He objected that, " by force of section 766 of the Revised Statutes of the United States, any proceedings to carry out said judgment or sentence in said Court of Oyer and Terminer, or by or under the authority of the State of New York, before final judgment should be entered in said proceedings in said Circuit Court, were null and void." This objection was disregarded, and the court sentenced him to suffer death in the week commencing January 12, 1891, and accordingly remanded him for that purpose to the custody of the agent and warden at the state prison at Sing Sing.

On the 7th of January, 1891, he filed in the Circuit Court of the United States a second petition for a writ of *habeas corpus*, in which, after setting out most of the above facts, he stated that, whereas by the constitution and laws of New York he was entitled, upon his trial, to counsel, and appeared upon his arraignment without counsel, and was asked by the court if he desired the aid of counsel, and answered that he did, the court thereupon assigned him as counsel, who afterwards took part in all the proceedings upon the indictment, directing and controlling the defence, "one not admitted or qualified to practise as an attorney or counsellor at law in the courts of said State, of which petitioner was at all times in all the proceedings aforesaid ignorant, and thereby petitioner was deprived of due process of law for his defence; " that petitioner, being an alien subject of the Emperor of Japan, unacquainted with the laws of New York, and unable to speak or understand the English language, was obliged to rely wholly upon said counsel for his defence; that the indictment alleged that the wound inflicted by the petitioner was in the

Statement of the Case.

breast of one Mura Commi, the person alleged to have been murdered; that the proof was that the wound was not in the breast, but in the neck; from behind; that having no notice by the indictment that he would be called upon to explain a wound from behind, such allegation was misleading; that the proof was a substantial variance from the indictment, " which petitioner is advised would have constituted a valid objection to the admission of evidence, the reception of a verdict and in arrest of judgment, had his rights in that behalf been duly asserted by lawful counsel;" but that "all the occasions having passed when, in the lawful course of procedure, the objection could be taken, not having been duly taken, reserved and presented, petitioner has suffered great prejudice, and in other respects his rights upon his trial were prejudiced and sacrificed by the said assignment of counsel;" and that "now, so it is, that neither by motion for a new trial nor by motion in arrest of judgment nor otherwise, under the limitations of the laws of the State of New York, can any court of said State take cognizance or afford petitioner any relief in the premises, and petitioner has no remedy or protection in respect thereto, except under the Fourteenth Amendment to the Constitution of the United States, as an additional guarantee to the constitution of the State of New York, for his protection upon an equality with all in the enjoyment of his right to the assistance of counsel, and to due process of law in that respect."

It also alleged that the judgment and sentence and his restraint under them were without due process of law in this: That the indictment " was found by a grand jury in the Court of General Sessions of the Peace in and for the city and county of New York, at the November term of said court, 1889 ; that from the list and panel of jurors from which said grand jury was selected and drawn, certain and all persons of the color and race of petitioner, who is a native-born subject of the Emperor of Japan and dark-brown in color, were excluded on account of their said race and color, although many persons of said race and color, naturalized citizens of the United States, and in all respects qualified to serve as such jurors, were, at the time of the selection of said list and panel,

resident and being within said city and county, and who might otherwise have been drawn to serve upon said grand jury; and the same is true of the petit jury drawn to try the said indictment;" that "petitioner was ignorant of said facts in respect to said jurors at all the times aforesaid;" that "now, so it is, that neither by motion for a new trial nor by motion in arrest of judgment nor otherwise, under the limitations of the laws of the State of New York, can any court of said State take cognizance of or afford petitioner any relief in the premises, and petitioner has no remedy or protection in respect thereto, except under the Fourteenth Amendment of the Constitution of the United States, for his right to the equal protection and due process of law in the premises."

This application for the writ of *habeas corpus* was also denied, and the appellant claims, upon this appeal from the order denying the writ, that the indictment and the proceedings under it, as well as his detention, are in violation of the Constitution of the United States, and void,

*Mr. Roger M. Sherman*, for the petitioner, submitted on his brief.

*Mr. Isaac H. Maynard* opposing. *Mr. Charles F. Tabor*, Attorney General of the State of New York, was on the brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

As Jugiro's first written application for a writ of *hab. corpus* alleged that he was restrained of his liberty in violation of the Constitution of the United States, no question is made, as, indeed, none could be made, as to his right under the existing statutes of the United States, relating to *habeas corpus*, to have prosecuted an appeal to this court from the order of the Circuit Court denying that application. Rev. Stat. §§ 751, 752, 753, 761, 762, 763, 764, 765; Act of March 3, 1885, c. 353, 23 Stat. 437. But it is contended that the

appeal from that order deprived the state court of all power to proceed, not only while the appeal was pending and undetermined here, but until the mandate of this court was sent down to the Circuit Court. This contention is supposed to be justified by section 766 of the Revised Statutes, limiting the power of the state court before and after an appeal from the final decision in a Circuit Court of the United States of an application for a writ of *habeas corpus* by one alleged to be restrained of his liberty in violation of the Constitution, or some law or treaty, of the United States. Rev. Stat. §§ 763, 764, 765. The latter section provides: "Pending the proceedings or appeal in the cases mentioned in the three preceding sections, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any state court, or by or under the authority of any State, for any matter so heard and determined, or in process of being heard and determined, under such writ of *habeas corpus*, shall be deemed null and void."

Of the object of the statute there can be no doubt. It was — in cases where the applicant was held in custody under the authority of a state court or by the authority of a State — to stay the hands of such court or State, while the question as to whether his detention was in violation of the Constitution, laws or treaties of the United States was being examined by the courts of the Union having jurisdiction in the premises. But the jurisdiction of the state court in the cases specified is restrained only pending the proceedings in the courts of the United States, and until final judgment therein. This court, on the 24th of November, 1890 — as we know from our own records — affirmed, with costs, the judgment of the Circuit Court denying the former application for a writ of *habeas corpus*. That was its final judgment in the premises, because it determined the whole controversy involved in the appeal. Upon its rendition, the appeal from the judgment of the Circuit Court was no longer pending in this court; and nothing remained that was "in process of being heard and determined." It was none the less a final disposition of the

case because, at a subsequent date, under the rules and practice of this court, a mandate would be sent down to the Circuit Court, showing the fact of the affirmance of its judgment. It is true that it would have been more appropriate and orderly if the state court had deferred final action until our mandate was issued and filed in the Circuit Court. But, in view of the words of the statute, we do not feel authorized to hold that the order in the state court of December 1, 1890, made after the final judgment here of November 24, 1890, was absolutely void. As Congress went no further than to stay the hands of the state court " until final judgment," we cannot superadd the condition that the filing of the mandate in the Circuit Court — in case of the mere affirmance of its judgment refusing a writ of *habeas corpus* — is absolutely necessary before the state court can proceed in the execution of the judgment of conviction. Of course, where, in such a case as this, the state court proceeds, after final judgment is entered here on the appeal of the person imprisoned or held in custody, but before our mandate goes down to the Circuit Court, it does so at the risk that its orders may be controlled and, if need be, annulled, if this court, during the term, should suspend or set aside its own judgment. While it is not difficult to perceive that serious complications may sometimes arise where the state court acts with undue haste, and proceeds before the mandate of this court is issued, and without any special application being made therefor, we do not feel at liberty to declare its action, taken after and in conformity with the final judgment here, to be void, simply because it was taken before the mandate was sent down. Nothing but an entire want of jurisdiction in the state court to make the order of December 1, 1890, could have justified the Circuit Court in interfering with its proceedings by writ of *habeas corpus*. We are of opinion that there was no such want of jurisdiction.

The remaining grounds set forth in the appellant's petition for his discharge from custody are substantially disposed of by the decision in *Wood* v. *Brush, ante,* 278, just rendered. The alleged assignment, at the trial of the appellant, of one as his

counsel who (although he may have been an attorney at law) had not been admitted or qualified to practise as an attorney or counsellor at law in the courts of New York; the misdescription in the indictment of the wound he was charged with having inflicted upon the deceased; and the exclusion from the list of grand and petit jurors of citizens of the United States of the same race with appellant, were all matters occurring in the course of the proceedings and trial in a court of competent jurisdiction, proceeding under statutes that do not conflict with the Constitution of the United States. The errors, if any, committed by that court in respect to any of those matters, did not affect its jurisdiction of the offence or of the person accused, and cannot be reached by *habeas corpus.*

It may be, as is claimed, that the appellant is unacquainted with our laws and language. But that fact, however material or important in support of an application to the proper authorities for a pardon, or for a commutation of the sentence, is immaterial upon this inquiry as to the authority of a court of the United States, by a writ of *habeas corpus,* to review and annul the judgment of a state court administering the criminal laws of a State.

It is equally immaterial that the appellant is the subject of a foreign government. That does not entitle him to exemption from responsibility to the laws of the State into which he may choose to go. The criminal laws of New York make no discrimination against him because of his nativity or race. They accord to him when upon trial for his life or liberty the same rights and privileges that are accorded, under like circumstances, to native or naturalized citizens of this country. Besides, no person, charged with a crime involving life or liberty, is entitled, by virtue of the Constitution of the United States, to have his race represented upon the grand jury that may indict him, or upon the petit jury that may try him. And so far as the Constitution of the United States is concerned, service upon grand and petit juries in the courts of the several States may be restricted to citizens of the United States. It rests with each State to prescribe such qualifications as it deems proper for jurymen, taking care only that no

discrimination, in respect to such service, be made against any class of citizens solely because of their race. The statutes of New York regulating these matters do not, in any way, conflict with the provisions of the Federal Constitution; and if, as alleged, they were so administered by the state court, in appellant's case, as to discriminate against him because of his race, the remedy for the wrong done to him was not by a writ of *habeas corpus* from a court of the United States.

For the reasons stated in this opinion, and in *Wood* v. *Brush*, the judgment is

*Affirmed.*

MR. JUSTICE GRAY was not present at the argument and took no part in the decision of this case.