**LOUIE YUNG v. COLEMAN, Sheriff.**

**LOUIE FAT TONG v. SAME.**

**CHIN YOCK CHONG v. SAME.**

Nos. 1848, 1850, 1849.

District Court, D. Idaho, S. D.
Jan. 9, 1934.

W. H. Langroise and James F. Ailshie, Jr., both of Boise, Idaho, for petitioners.

Homer E. Martin, Pros. Atty., of Boise, Idaho, for defendant.

CAVANAH, District Judge.

The petitioners for writs of habeas corpus filed on January 2, 1934, were about December 14, 1933, and without a warrant of arrest or a charge being filed against them, taken into custody of the defendant as sheriff of Ada county, Idaho, and have since then been confined in the jail of the county until the 4th day of January, 1934, when a warrant was issued out of the probate court of the county commanding the defendant to arrest the petitioners and bring them before the probate judge. The warrants were based upon criminal complaints made and laid before the probate court by the prosecuting attorney of the county, charging them with the crime of murder in the first degree. Return was made by the defendant on the warrants, and the petitioners were produced in the probate court for arraignment on January 4, 1934, and commitments were issued by the court to the defendant, who thereupon returned and confined them in the jail of the county.

The order to show cause required the defendant to appear in this court at 10 o'clock a. m. on January 5, 1934, at which time a hearing was had and evidence offered by both the petitioners and the defendant. The petitions are similar, and were submitted together, and two questions are presented for a proper decision of the cases:

First. Whether the petitioners were denied the right of counsel, and, if so, whether such denial infringes the Sixth and Four-

teenth Amendments granting to an accused the right to the assistance of counsel for their defense. The right to counsel being conceded, the parties should be afforded a fair opportunity to secure counsel of their own choice and have his assistance for their defenses. A brief review of the record shows that the petitioners were Chinese persons, and the assistance of an interpreter is necessary when one is talking to them in the English language. On January 1 and 2, 1934, their counsel requested permission to consult with them, and was informed by the defendant and the prosecuting attorney that they could do so with an interpreter, provided there was also an interpreter present selected by them. Although counsel for petitioners insisted in talking with them alone with their interpreter, it was refused by the defendant and the prosecuting attorney, and he finally, after being denied the right to talk with the petitioners alone, thought it would be proper for both interpreters to be present. This he did not have to concede, as the Constitution gave to the petitioners the right to consult with their attorney alone. The state district judge recognized their constitutional right, and informed the defendant that they should be permitted to talk with their counsel at all reasonable hours.

The Sixth Amendment provides that in all criminal prosecutions the accused shall enjoy the right "to have the assistance of counsel for his defense," and also it is within the intendments of the "due process of law" clause of the Fourteenth Amendment that one accused of an offense shall be entitled to the assistance of counsel at all times.

The test applied to determine whether due process of law had been accorded is found in the case of Powell v. Alabama, 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, where the Supreme Court applied both the Sixth and the Fourteenth Amendments in ascertaining whether an accused was entitled to the assistance of counsel, and the right to such assistance was recognized by the court under the constitutional provisions. A fair interpretation of these constitutional provisions is that an accused is entitled to secure the assistance of counsel before and at his trial.

As due process of law means a course of legal proceedings which must proceed according to established procedure and the aid of legal advice, and means of investigating the charge against the accused, it would be a denial of the constitutional rights of one who is held in prison and accused of a crime to refuse counsel an opportunity to talk with him, unless some one else is present who may listen to what is said by the accused to his counsel. The officer in whose custody the accused is should grant to him an opportunity to be alone with his counsel at reasonable hours, but within the sight of the officer or in a place where an escape could not occur.

■■ We are thus brought to the second inquiry: Whether the filing of the criminal complaints by the prosecuting attorney in the probate court of the county on January 4th, 1934, and while the applications for writs of habeas corpus were pending in the United States District Court, charging the petitioners with the crime of murder, the issuing of warrants of arrest thereon, and the committing of them to the defendant as sheriff, who has confined them in the county jail, are void under section 766, Revised Statutes (28 USCA § 465).

This section of the statute reads as follows: "Pending the proceedings or appeal in the cases mentioned in sections 463 and 464 of this title, and until final judgment therein, and after final judgment of discharge, any proceeding against the person so imprisoned or confined or restrained of his liberty, in any State court, or by or under the authority of any State, for any matter so heard and determined, or in process of being heard and determined, under such writ of habeas corpus, shall be deemed null and void. No such appeal shall be had or allowed unless taken within the time prescribed by section 230 of this title."

The object of the statute is clear and it should be given a reasonable construction with a view to make effectual the legislation intended. It would be well to bear in mind, in deciding its applicability, the observations of Mr. Justice Pitney in the case of Frank v. Mangum, 237 U. S. 309, 35 S. Ct. 582, 589, 59 L. Ed. 969: "That the due process of law guaranteed by the 14th Amendment has regard to substance of right, and not to matters of form or procedure; that it is open to the courts of the United States, upon an application for a writ of habeas corpus, to look beyond forms and inquire into the very substance of the matter, to the extent of deciding whether the prisoner has been deprived of his liberty without due process of law, and for this purpose to inquire into jurisdictional facts, whether they appear upon the record or not; that an investigation into the case of a prisoner held in custody by a state on conviction of a crim-

inal offense must take into consideration the entire course of proceedings in the courts of the state, and not merely a single step in those proceedings."

In speaking of section 766, the Supreme Court in the case of Rogers v. Peck, 199 U. S. 425, 26 S. Ct. 87, 90, 50 L. Ed. 256, said: "Statutes should be given a reasonable construction with a view to make effectual the legislative intent in their enactment. The object of this statute is apparent. It requires the state courts and authorities to make no orders, and entertain no proceeding, which shall interfere with the full examination and final judgment in a habeas corpus proceeding in the the Federal courts (In re Shibuya Jugiro, 140 U. S. 291, 11 S. Ct. 770, 35 L. Ed. 510), and in no wise to interfere with the judgment if it shall result in a restoration of the petitioner's freedom when wrongfully imprisoned or restrained. The proceedings annulled are 'against the person so imprisoned,' etc. The statute aims to entirely prevent action which shall interfere with the perfect freedom of the Federal courts to inquire into the case and make such orders and render such judgment as they shall see fit."

The state authorities and courts are prevented by this statute from making any order or entering any proceedings which shall interfere with the full determination and final judgment in a habeas corpus proceeding pending in the federal court. This interpretation has been given by repeated decisions of the federal courts both in cases where the application for a writ of habeas corpus has not been decided in the trial federal court, and also while, during the pendency of an appeal, new proceedings of the same character were instituted. In the cases where the state undertook to entertain proceedings after the application was determined by the trial federal court, and, pending on appeal to the Supreme Court and to the Circuit Court of Appeals, the statute was given a broad construction, and it was held that no action of the state shall take place pending the proceedings in the federal courts. It is interesting to refer to those decisions. In a well-considered case of In re Shibuya Jugiro, 140 U. S. 291, 11 S. Ct. 770, 35 L. Ed. 510, where the defendant on December 3, 1889, in the state court was convicted of the crime of murder, and on the 16th day of the same month was sentenced to suffer death, the sentence was stayed by an appeal to the Court of Appeals of New York until December 1, 1890. The judgment was affirmed on October 7, 1890. People v. Jugigo, 123 N. Y. 630, 25 N. E. 317. Prior to such affirmance, the defendant filed in the Circuit Court of the United States for the Southern District of New York a petition for a writ of habeas corpus to inquire into the question of his detention. The writ was refused, and upon appeal the judgment of the court was affirmed by the Supreme Court on November 24, 1890. On December 1, 1890, the mandate of the Supreme Court not having been issued, the defendant was arraigned before the state trial court to show cause why a day should not be fixed for the infliction upon him of the punishment of death. He objected that by section 766, Revised Statutes (28 USCA § 465), any proceedings to carry out said judgment of sentence before final judgment should be entered in the proceedings in the Circuit Court were null and void. This objection was disregarded, and sentence was pronounced that the defendant suffer death in the week ending January 12, 1891. On January 7, 1891, the defendant filed in the Circuit Court of the United States (Ex parte Jugiro, 44 F. 754) a second petition for a writ of habeas corpus setting out most of the same facts in the first one, and further asserting that he was not accorded counsel at his trial. This application for the writ of habeas corpus was also denied, and an appeal was taken to the Supreme Court (Jugiro v. Brush, 140 U. S. 291, 11 S. Ct. 770, 772, 35 L. Ed. 510) where it was said:

"Of the object of the statute there can be no doubt. It was—in cases where the applicant was held in custody under the authority of a state court or by the authority of a state—to stay the hands of such court or state while the question as to whether his detention was in violation of the constitution, laws, or treaties of the United States was being examined by the courts of the Union having jurisdiction in the premises. But the jurisdiction of the state court in the cases specified is restrained only pending the proceedings in the courts of the United States, and until final judgment therein. This court, on the 24th of November, 1890—as we know from our own records—affirmed, with costs, the judgment of the circuit court denying the former application for a writ of habeas corpus. That was its final judgment in the premises, because it determined the whole controversy involved in the appeal. Upon its rendition the appeal from the judgment of the circuit court was no longer pending in this court, and nothing remained that was 'in process of being heard and determined.' It was none the less a final disposition of the

case, because, at a subsequent date, under the rules and practice of this court, a mandate would be sent down to the circuit court, showing the fact of the affirmance of its judgment. It is true that it would have been more appropriate and orderly if the state court had deferred final action until our mandate was issued and filed in the circuit court; but, in view of the words of the statute, we do not feel authorized to hold that the order in the state court of December 1, 1890, made after the final judgment here of November 24, 1890, was absolutely void. As Congress went no further than to stay the hands of the state court 'until final judgment,' we cannot superadd the condition that the filing of the mandate in the circuit court—in case of the mere affirmance of its judgment refusing a writ of habeas corpus—is absolutely necessary before the state court can proceed in the execution of the judgment of conviction. Of course, where, in such a case as this, the state court proceeds, after final judgment is entered here on the appeal of the person imprisoned or held in custody, but before our mandate goes down to the circuit court, it does so at the risk that its orders may be controlled, and if need be, annulled, if this court, during the term, should suspend or set aside its own judgment. While it is not difficult to perceive that serious complications may sometimes arise where the state court acts with undue haste, and proceeds before the mandate of this court is issued, and without any special application being made therefor, we do not feel at liberty to declare its action, taken after and in conformity with the final judgment here, to be void, simply because it was taken before the mandate was sent down. Nothing but an entire want of jurisdiction in the state court to make the order of December 1, 1890, could have justified the circuit court in interfering with its proceedings by writ of habeas corpus. We are of opinion that there was no such want of jurisdiction."

The Supreme Court again considered this statute in the case of McKane v. Durston, 153 U. S. 684, 14 S. Ct. 913, 915, 38 L. Ed. 867, where the defendant was charged with violation of a state law and found guilty and sentenced on February 19, 1894. On May 15, 1894, application for a writ of habeas corpus was presented to the Circuit Court of the United States. An appeal was taken from the decision of the Circuit Court to the Supreme Court where it is said: "The point here made, if we do not misapprehend counsel for the accused, is that a suspension of proceedings in the state court, when it occurs under the circumstances stated in section 766 of the Revised Statutes of the United States [28 USCA § 465], has the same effect as a certificate of reasonable doubt given by a state judge, under the state law, after the execution of the judgment of conviction has commenced. This contention cannot be sustained. The only purpose of the federal statute was to prevent the state court, or the state, pending proceedings on appeal to this court, from changing, to the prejudice of the accused, the situation as it was at the time the appeal was taken from the judgment of a circuit court disallowing an application for a writ of habeas corpus based upon grounds of which, under the statutes of the United States, the courts of the Union could take cognizance."

Again in Ex parte Martin, 180 F. 209, 210, Judge Wolverton of the United States Circuit Court of Oregon, in a case where the defendant was charged in the justice's court in May, 1909, with the violation of a state statute relating to peddlers, and his application for a writ of habeas corpus was allowed on May 28, 1909, and subsequently on June 5, 1909, the defendant was acquitted, the court, when interpreting this section, said: "The effect of this statute is to stay the hand of the state court, after a writ of habeas corpus has been issued by a federal court, until the cause thus brought upon the record is heard and determined. The state court is, after the issuance of such writ, wholly without authority to proceed further in the premises as against the petitioner. Such is the decision of the United States Supreme Court in the cases of In re Shibuya Jugiro, 140 U. S. 291, 294, 295, 11 S. Ct. 770, 35 L. Ed. 510; McKane v. Durston, 153 U. S. 684, 14 S. Ct. 913, 38 L. Ed. 867." See United States ex rel. Wiseman v. Brown (C. C. A.) 281 F. 657.

Referring to section 766 again we find that it says, first, "pending the proceedings," which refers to the proceedings in the federal courts from the time an application for a writ of habeas corpus is filed until it is finally determined, from doing any act which has been, or may be, declared to be unlawful by the federal courts. So the filing of the criminal complaints, the issuance of the warrants of arrest thereon, and committing the petitioners to the custody of the defendant as sheriff of the county, is a proceeding against them in the state courts and under authority of the state.

The remaining portion of section 766 "or appeal in the cases mentioned in sections 463 and 464 of this title" relates solely to cases pending on appeal in the federal courts to

the federal appellate courts, and under the record here does not apply.

■■ While the conclusion reached that the petitioners were not accorded the right of assistance of counsel by the defendant until January 4, 1934, when they were informed by the probate court of such right, and that the proceedings in which charges were filed against them in the probate court and warrants of arrest issued thereon, while the application for writs of habeas corpus were pending in this court, do not prevent the federal court from discharging the petitioners, yet the question still remains where, under the federal statutes, the courts of the United States have power to grant writs of habeas corpus for the purpose of inquiring into the cause of restraint of liberty of any person in prison and in custody under authority of the state, in violation of the Constitution or a law of the United States, the United States courts in the exercise of such power are not bound to discharge by writ of habeas corpus every such prisoner, and should not do so in advance of trial in the state courts, except in cases of peculiar urgency. The injunction to hear the case summarily and "to dispose of the parties as law and justice requires" (28 USCA § 461), does not deprive the court of discretion as to the mode and time in which it will assert the power conferred. This principle was upon great consideration recognized in the case of Ex parte Royall, 117 U. S. 241, 6 S. Ct. 734, 740, 29 L. Ed. 868, where the court said:

"* * * Does the statute imperatively require the circuit court, by writ of habeas corpus, to wrest the petitioner from the custody of the state officers in advance of his trial in the state court? We are of opinion that while the circuit court has the power to do so, and may discharge the accused in advance of his trial if he is restrained of his liberty in violation of the national Constitution, it is not bound in every case to exercise such a power immediately upon application being made for the writ. We cannot suppose that Congress intended to compel those courts by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode

in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. * * *

"That these salutary principles may have full operation, and in harmony with what we suppose was the intention of Congress in the enactments in question, this court holds that where a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the circuit court has a discretion whether it will discharge him upon habeas corpus, in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the circuit court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the state, or whether it will proceed, by writ of habeas corpus, summarily to determine whether the petitioner is restrained of his liberty in violation of the Constitution of the United States."

In Baker v. Grice, 169 U. S. 284, 290, 18 S. Ct. 323, 325, 42 L. Ed. 748, an appeal from the final order of the Circuit Court of the United States in habeas corpus (79 F. 627), it was said: "The court below had jurisdiction to issue the writ, and to decide the questions which were argued before it. Ex parte Royall, 117 U. S. 241, 6 S. Ct. 734, 29 L. Ed. 868; Whitten v. Tomlinson, 160 U. S. 231, 16 S. Ct. 297, 40 L. Ed. 406. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while circuit courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of habeas corpus, yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that, instead of discharging, they will leave the prisoner to be dealt with by the courts of the state; that after a final determination of the case by the

state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court."

Such also was in Whitten v. Tomlinson, 160 U. S. 231, 16 S. Ct. 297, 301, 40 L. Ed. 406, where it was said:

"By the existing statutes, this court and the circuit and district courts, and any justice or judge thereof, have power to grant writs of habeas corpus for the purpose of inquiring into the cause of restraint of liberty of any prisoner in jail who 'is in custody in violation of the Constitution or of a law or treaty of the United States'; and 'the court or justice or judge, to whom the application is made, shall forthwith award a writ of habeas corpus, unless it appears from the petition itself that the party is not entitled thereto'; and 'shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice may require.' Rev. St. §§ 751–755, 761 [28 USCA §§ 451, 455, 461].

"The power thus granted to the courts and judges of the United States clearly extends to prisoners held in custody, under the authority of a state, in violation of the Constitution, laws, or treaties of the United States. But in the exercise of this power the courts of the United States are not bound to discharge by writ of habeas corpus every such prisoner."

And in U. S. ex rel. Drury v. Lewis, 200 U. S. 1, 26 S. Ct. 229, 231, 50 L. Ed. 343, the Supreme Court approved the language used in the case of Baker v. Grice, supra, in saying that: "The rule thus declared is well settled, and, in our judgment, it was properly applied in this case."

. The instant cases would not warrant the court in exercising the power of discharging the petitioners where an extraordinary situation does not exist and where sufficient grounds for detention of them appears, as they are charged in criminal complaints filed by the prosecuting attorney in the state court of the crime of murder in the first degree. These cases do not come within the exception, such as peculiar and urgent cases, or of so exceptional a nature that the defendant should be discharged, as in In re Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55, in which a deputy marshal of the United States, charged under the Constitution and laws of the United States with the duty of guarding and protecting a judge of a court of the United States, and of doing whatever might be necessary for that purpose, even to taking of human life, was discharged on habeas corpus from custody under commitment by a magistrate of a state.

Moreover, after the return of the defendant shows that the petitioners are now being held in custody under the charge of murder in the first degree and that a speedy remedy is accorded to them under the state statute of a trial and to be represented by counsel, it would seriously interfere with the administration of criminal justice in the courts for me to immediately exercise the power and discretion vested in the federal court in discharging them under the record. This court's attention is called to the fact that the state asserts that the petitioners are being held, not only under the charge filed in the probate court, but that the state authorities believe that the petitioners are the ones who. recently committed the crime of murder. Under such circumstances, the state should be given the right, under the law, of a reasonable time within which to proceed in bringing them to trial in the state courts, and this should be done without much delay. The defendant is directed to at once allow the petitioners the right to secure and consult alone with their counsel and with such interpreter as they may select. and, should a denial of that right occur again, and the petitioners are not proceeded against according to the laws of the state within a reasonable time, such time to be first presented to, and decided by the state court, upon an application for a writ of habeas corpus to this court, the petitioners will be discharged from custody.

Prayers of the petitioner in each of the cases for a writ of habeas corpus are denied, and they are remanded to the custody of the sheriff of Ada county.