PATRICK H. SHIELDS *v.* J. RANSEL ROMINE, *etc., et al.*

(No. 9205)

Submitted April 4, 1941. Decided April 22, 1941.

*Stathers, Stathers & Cantrall, Lawrence R. Lynch* and *Mary Frances Brown,* for relator.

*Clifford R. Snider,* for respondents.

Fox, Judge:

This proceeding involves the effect to be given to the rules of this Court permitting the filing of petitions to rehear its decisions within thirty days from the date of the order evidencing the same, and the long existing procedure of withholding certification of such decisions, except where otherwise ordered, until the time allowed for rehearing has expired. In other words, do the decisions of this Court become final, in the sense that they can be enforced, until the expiration of the time within which a petition for rehearing can be filed? A decision on this question requires a study of the statutes, rules and proceedings of this Court bearing thereon.

There is no statutory authority for rehearing, on their merits, of cases decided by this Court. The right to rehear cases during the term at which decided has its base in the universal rule that all orders and decrees are within the breast of the court during the term. After the term ends, the court is powerless to change its ruling on the merits, unless under its rule-making powers it may so provide. *Hall* v. *Bank of Virginia,* 15 W. Va. 323. Code, 58-5-26, provides for rehearings at the next succeeding regular term as to clerical errors, and while the language is somewhat obscure as to the extension of the section to other errors, this Court in *Hall* v. *Bank of Virginia, supra,* expressly held that it was confined to clerical errors. So, we say there is no statutory authority for the rehearing of cases by this Court on their merits.

The matter is one which has been controlled by rules adopted from time to time. On January 21, 1864, the following rule was adopted:

"8. No certificate of a judgment or decree of the Court of Appeals, shall, without the special

direction of the court, be transmitted to any inferior court, in less than sixty days from the rendition thereof, unless the Court shall previously have adjourned for one or more weeks."

On July 5, 1884, we find the first order relating to rehearings:

"Rule XII. Rehearing. 1. *How obtained.*—No petition for a rehearing will be entertained unless made during the term at which the decision is announced (unless as otherwise authorized by law), and no rehearing will be allowed unless one of the Judges who concurred in the decision shall be dissatisfied with the conclusion reached. And no petition for a rehearing will be entertained by the court in any case unless the reasons therefor are printed and filed with the petition, but if the decision complained of is announced within fifteen days of the close of the term the printing may be dispensed with."

It will be noted that under this rule, petitions must have been filed during the term at which the decision was announced. Nearly twenty years later, February 2, 1904, the rule quoted above was amended and made to read:

"Rule XII. Re-hearing. 1. *How obtained.*—No petition for a rehearing will be entertained unless presented within the term at which the decision was announced, nor, in any case later than thirty days after the date of the decision of the case in which it is presented (unless as otherwise authorized by law), and no re-hearing will be allowed, unless one of the judges who concurred in the decision shall be dissatisfied with the conclusion reached; and no petition for a re-hearing will be entertained by the Court in any case, unless the reasons therefor are printed and filed with the petition; but if the decision complained of is announced within fifteen days of the close of the term, the printing may be dispensed with."

It will be observed that the petition was required to be filed within the term at which the decision sought to be

reheard was announced, and could not be filed after thirty days from the decision. This is the first limitation provided for so long as the petition was filed within the term.

Presumably these rigid requirements did not meet the approval of litigants and the bar. No doubt the current practice of announcing numerous decisions on the last day of a regular term then existed; if so, the right to have a review or rehearing of cases by this Court was practically destroyed as to all cases decided at and near the end of the term. On June 13, 1908, the last day of the January Term, 1908, of this Court, the following order was entered:

"It is ordered that the operation of the final judgments or decrees entered at this term in the four foregoing cases be and the same is hereby suspended for a period of thirty days from the date of the decision thereof, and that in each of the foregoing cases in which a petition for rehearing is filed in the Clerk's office within said thirty days, the operation of the final judgment or decree in such case is suspended until the further order of this Court, but in all cases in which a petition for rehearing is not so filed within said thirty days, the judgments or decrees of this Court in such cases shall become final and be severally certified as heretofore directed. It is further ordered that the Clerk may certify the mandate to the Circuit Court in any case decided at this term where the parties jointly request in writing the mandate to be so certified."

On June 12, 1909, a similar order, more general in its terms, was entered on the last day of the term:

"It is ordered that the operation of the final judgments or decrees entered by this Court on the 11th day of June, 1909, be and the same is hereby suspended for a period of thirty days from said date; but if a petition for re-hearing is filed in the Clerk's office within said thirty days, the operation of such final judgment or decree in

such case is suspended until the further order of this Court, and in all cases in which a petition for rehearing is not so filed within said thirty days, the judgments or decrees of this Court in such cases shall become final and be severally certified as heretofore directed.

"It is further ordered that the Clerk may certify the mandate to the Circuit Court in any case decided at this term when the parties jointly request in writing that the mandate be so certified."

Similar orders have been entered on the last day of each regular term of this Court since the date of the order last above quoted, and as showing the form of the order now employed, we quote the order entered by the Court on the adjournment of its September Term on December 14, 1940:

"It is ordered that the operation of the final judgments or decrees entered at this term, not heretofore suspended, since the 14th day of November, 1940, be, and it is hereby suspended for a period of thirty days from the dates said judgments or decrees were entered, and that in each of said causes in which a petition for rehearing is filed in the office of the Clerk of this Court within said thirty days, the operation of the final judgment or decree in such cause is hereby suspended until the further order of the Court, but in all causes in which no such petition for rehearing is filed within said thirty days, the judgments or decrees of this Court shall become final and be severally certified as heretofore directed. It is further ordered that the Clerk may certify the mandate to the circuit court in any cause decided at this term since the 14th day of November, 1940, when the parties jointly request in writing that the mandate be so certified."

A reading of the orders of suspension quoted and referred to above will disclose a clear intent to suspend all orders and decrees entered less than thirty days prior to the adjournment of the term at which they were an-

nounced, for such time as might be necessary to afford the dissatisfied party an opportunity to file his petition for rehearing within the thirty-day period provided therefor by the rules; and the order in current use provides "but in all causes in which no such petition for rehearing is filed within said thirty days the judgment or decrees of this Court shall become final." This clearly indicates that during the thirty-day period the judgment or decree is not final. Furthermore, the order provides that as to the judgments or decrees covered thereby they are "suspended for a period of thirty days from the dates said judgments or decrees were entered." Suspension means that during the period to which it applies, the judgment or decree suspended is absolutely inoperative. *Mason v. Harpers Ferry Bridge Co.*, 16 W. Va. 864. Clearly, as to judgments and decrees covered by these orders they were suspended and did not become final on the adjournment of the term. The power to break through the general rule of law that judgments and decrees become final upon the adjournment of a term of court, can only rest on the rule-making power of the Court, and this power was, no doubt, exercised to safeguard the right of a litigant to a reasonable time in which to point out what might seem to him to be an error in the decision against him. That reasonable time the Court has fixed at thirty days, and was, we think, intended to apply to all cases, and not merely to those decided less than thirty days before the adjournment of the term. We are of the opinion that when this Court, under its rule-making power, inherent and statutory, provided that petitions to rehear its decisions might be filed within thirty days, it was intended to fix a period within which its judgments and decrees should be inoperative in the sense that there could be any enforcement thereof or the losing litigant deprived of any right which may have been involved in the cause decided. We are unable to see any ground for distinction in cases decided more than thirty days before adjournment and those decided within that period. Why should the litigant whose case is decided on the last day of the term have the judgment or decree against him sus-

pended for thirty days, and the litigant whose case happened to have been decided near the beginning of the term subjected to a different rule?

The question at issue involves the interpretation of the rules of this Court, and we, therefore, feel at liberty to refer to our own records. Code, 58-5-28, provides that "when any term of the Supreme Court of Appeals is ended, or sooner if the court so direct * * *," the clerk shall certify its decisions to the clerk of the court below, which certification, however, can be had at any time on joint application of interested parties. This certification, commonly called the mandate, is then entered on the record of the court below as its decision. Code, 58-5-29. We know from our own records that since the adoption of the rule requiring the filing of petitions for rehearing within thirty days, and the use of the orders permitting the filing of petitions for rehearing within thirty days, and the use of the orders permitting the filing of such petitions within said period, even after the adjournment of the term, our decisions are not certified to the lower court until expiration of said period. Of course, in exceptional cases, or upon joint request of the parties, we can do so. In the ordinary case, not involving original jurisdiction or contempt, we do not enforce our orders and decrees; we certify our decisions to the court below, and they are executed through its processes. We sometimes enter here the order or decree which we think the court below should have entered, but we go no further. This being true, strongly argues, we think, for the position that the judgments and decrees of this Court should not be treated as final and operative during the period within which a petition for rehearing may be filed.

There are practical considerations involved. When a petition for rehearing is filed, the routine order is to suspend immediately the judgment or decree to which the petition relates and the suspension continues until action is taken on the petition to rehear. In the case at bar, if we accept the contention of the respondents, and the appointment of Scanes be otherwise regular, then Shields was ousted from office and Scanes becomes his successor. When the petition to rehear was filed, then the order oust-

ing Shields was suspended, and logically he would be entitled to be restored to office; should we grant a rehearing, he would continue in office until a decision was had on a re-argument of the case, unless his term of office should sooner expire. It would be a case of "on again, off again." The office in controversy would be shuttled from one contender to the other, depending on this Court's action, with consequent possible impairment of a public service. If we adopt the contention of the relator, matters remain in status quo until the dispute is finally settled, and the necessary adjustments in case the removal order is adhered to would be of a permanent nature, with probably no prejudice to the public. The same considerations would apply to other cases not of a public nature. In cases where a recovery of money is involved, we doubt if it will be contended that an execution can be issued and collection enforced, or property subjected to sale in advance of the certification of this Court's decision and its entry on the records of the Court from which the writ of error or appeal was taken. We see no grounds for a distinction between such a case and one involving a removal from office. In either case, the losing party is entitled to his day in court within the statutes, laws and rules of court by which the dispute is governed. In either case, a substantial legal right is involved in the adjudication of which the same rule should apply. This Court is not unanimous on the question of the effect to be given to the removal order entered by the circuit court, a minority contending that the circuit court did not have power to suspend its order, but that question is not here involved, and we hold that, independent of that question, the circuit court's order having been suspended by the granting of a writ of error, we should now apply the prevailing rule to our decision in respect to when it becomes final and operative.

Some confusion of thought is created by the cases of *Long* v. *Perine*, 44 W. Va. 243, 28 S. E. 701; *Dunfee* v. *Childs*, 59 W. Va. 225, 53 S. E. 209, and *Jugiro* v. *Bush*, 140 U. S. 291, 11 S. Ct. 770, 35 L. Ed. 510. The latter case, while coming from the highest source, is in no way binding on

us, particularly when our own rules are involved. As to our own cases, we think consideration should be given to the fact that both were decided prior to the adoption of the rule which requires petitions for rehearing to be filed within thirty days from the date on which a decision is announced, and prior to the date when this Court first permitted such petitions to be filed after the adjournment of the term. Unquestionably, as a general rule, judgments and decrees of any court are effective from date of entry for most purposes, but the word "effective" may tend to confuse, because we know that even where they may be said to be effective, they are not always operative and enforceable until a later date. A judgment or decree for money may be said to be effective as of the date of its entry, but at the same time no execution can be issued thereon unless by special order under Code, 56-6-34. A decree for the sale of land or other property may justify the publication of a notice of sale to be made after the expiration of the suspension period. That was the *Long* v. *Perine* case, and Judge Brannon said "when the sale took place, this mandate was on record, leaving only the notice of sale before its recordation. How could that hurt Perine?" When the decree was enforced it had become final by the issuance and recordation · of the mandate. True, in *Dunfee* v. *Childs, supra,* the same judge said: "Generally the date of actual rendition is the date by which the judgment is to be tested as to its force and operation," but we think that, in view of our existing rules relating to rehearing and orders of suspension, the language used by Judge Brannon is not now fully applicable. We do not question the soundness of the general rule thus announced, but we think our rules and orders have encroached thereon to the extent that it should now be said that the same should not apply to judgments and decrees of this Court during the period when a petition to rehear the same may be filed, particularly in cases where the order or decree is in its nature self-executing.

Generally speaking, rules of procedure do not involve fundamental rights, and the consistency and uniformity of their application is of chief importance. Contem-

poraneous construction and long usage should govern where possible. We venture the assertion that the judgments and decrees of this Court are not considered by the members of the bar in general as having any finality during the period allowed for the filing of petitions for rehearing; by our own orders, some of these judgments and decrees are denied finality even after the adjournment of the term at which they are announced; a long course of official conduct on the part of this Court and its clerical force has established the rule that our decisions are not certified to the court below until after the expiration of thirty days, thus delaying the enforcement thereof by the court below, the only tribunal where, as a general rule, they can be enforced, and as a result denying any finality thereto in any true sense of the word. We think this practice has been accepted by the bar of the state, is supported by logic and our rules and orders, and that it should not now be disturbed.

We, therefore, hold that the respondent, J. Ransel Romine, by reason of the lack of finality of the order of this Court entered on March 15, 1941, affirming the order of the Circuit Court of Harrison County removing Patrick H. Shields from office as a member of the Water Board of the City of Clarksburg, did not have power to appoint a successor to the said Shields, and Fred H. Scanes, Jr., for that reason, did not, under his pretended appointment by Romine, legally become a member of the said water board; and that in consequence thereof, the pretended appointment of James W. Rodney as a member of said water board was illegal and void. It is not necessary to decide the question attempted to be raised by the relator in his petition as to the power of the respondent, J. Ransel Romine, to appoint an additional member of the said water board in the event he should become the sole remaining member thereof.

The writ of mandamus prayed for will be awarded.

*Writ awarded.*

Rose, Judge, dissenting:

I highly appreciate the very careful and accurate collection of authorities of Judge Fox in the majority opinion, and his reasoning therefrom so far as it relates to the usual order affirming or reversing a common law or chancery case in this Court; but we are not here dealing with an ordinary common law or chancery proceeding. The whole subject of removal from office of a municipal officer is purely statutory, and we must look to the statute itself, so far as its provisions go, for the effect of orders entered in such a proceeding.

To make the order of removal effective from its date would not at all be an anomaly in our court rules or procedure. There are many instances in which, without any specific statute, our courts have always regarded particular orders as taking effect immediately on their entry. A few of many instances are orders in mandamus, prohibition, certiorari, injunction, contempt, receiverships, and for special writs, continuances, fixing date for filing pleas, etc. Therefore, the legislature could, with perfect propriety, place the order removing a public officer among this class. And it appears that the legislature has done exactly this.

This statute, Code, 6-6-7, after specifying the grounds for removal, the method of instituting the proceeding, the method of process, the way of defending, and the manner of hearing or trial in court, provides:

> "From the date of any order of the circuit court, or judge thereof in vacation, removing an officer under this section, until the expiration of thirty days thereafter, and if an appeal be taken until the date of the suspension of such order if suspended, and if not suspended, until the final adjudication of the matter by the supreme court of appeals, the officer, court or body having power to fill a vacancy in such office may fill the same by a temporary appointment until a final decision of the matter, and when a final decision is made, shall fill the vacancy in the manner provided by law for such office."

This statute very plainly makes the order of the trial judge removing the officer effective *"from the date of any order * * * removing* an officer under this section * * *."* (Italics supplied). It is true that this order does not take its full and complete effect until later, but it is equally true that it does have a definite and prescribed effect from the moment it is entered. That effect is to create a vacancy in the office to the extent of allowing it to be filled temporarily. This effect is by the very statute itself made to operate instantly, without permitting the order to hang in abeyance until the end of the term at which it was entered, or for any other period. This character of the order is especially significant when we consider that the same section provides that a removal proceeding may be instituted before, and conducted by a judge of the court in vacation, in which case, of course, the order of removal would not await the expiration of any term of court in order to become final; and further, by the fact that the preceding section of the chapter provides the method for the removal of state officers by hearing before the governor, in which case also there could not possibly be any suspension until the expiration of a term.

The reason for this special provision is readily found in the character of the proceeding. In removing an official, time is the whole substance of the controversy— the term of the office, or period during which an officer shall be permitted to serve. If the effective date of a removal order is suspended, the remedy for the evil proceeded against is by that much destroyed. A specially long delay late in an officer's term, may totally neutralize the relief awarded by permitting the term to expire before the judgment for removal can take effect. Therefore, the legislature has provided that the order of removal, whether by the court, a judge, or the governor shall take the offender out of office at once, unless certain other enumerated steps are taken. Our whole law relating to controversies over the right to public office evince an intent that litigation in such matters shall be taken out of the ordinary course of legal procedure.

A provision of our statute for like speeding up of court

proceedings concerning public office is found in Code, 3-5-41, covering election controversies. This statute provides for summary proceedings by mandamus, certiorari, and prohibition, waiving certain preliminary steps therein, to compel the immediate performance of duties of election officials, and stipulating that unless the court enters a final order in such proceeding within fifteen days from its beginning, the same shall be dismissed. The statute also requires the Supreme Court to give such matters precedence over all other matters; and when such a writ, in an election case, has been issued by a judge thereof in vacation, to convene in special session not later than ten days from the date of the writ, and to determine the questions raised within five days. This statute, while not bearing directly on the question in issue, plainly indicates the legislative appreciation of the high necessity for prompt and effective determination of all controversies relating to public office.

The foregoing reasoning seems to be absolutely clear so far as the order of the circuit court was concerned. But how about the order of affirmance of this Court entered on March 15, 1941? The Code section under which the proceeding was had (6-6-7) provides that:

> "An appeal from an order of the circuit court, or judge thereof in vacation, removing or refusing to remove any person from office may be taken to the supreme court of appeals within the same time, in the same manner, and with the same right of suspension, and precedence, as in appeals from orders of the governor removing a state officer."

Section 6 of this article which relates to appeals from an order of the governor removing a state officer, provides that:

> "Any such officer against whom charges may have been brought as aforesaid, feeling aggrieved by his removal from office by the governor, may present his petition in writing to the supreme court of appeals, or to a judge thereof in vacation,

within thirty days after such removal from office by the governor, praying for the suspension, setting aside or vacating of such order of removal. * * * The hearing of the matter shall take precedence over all other matters before the court, except contested elections of secretary of state, auditor, treasurer, attorney general, state superintendent of free schools, commissioner of agriculture, or of a judge of any court."

Why is the time within which application for appeal may be made reduced from eight months to thirty days? Why is the hearing on an appeal given precedence over all other matters, except contests over the election of certain state officials? Why require such unusual promptness in the determination of the matter, if the decision is to hang in abeyance until the end of the term of court, or until it becomes "final" by some general rule or special order of the court? The terms of this Court are long. Such an appeal if heard on the first day of the term might be held in suspension for several months, if it is made to take the course of an ordinary order affirming or reversing a case here on appeal. It is very plain from the whole spirit of our legislation relating to contested questions of the right to public office that such a delay was abhorrent to the legislature, and that the spirit and purpose of this legislation is to bring such controversies to the earliest possible conclusion. It, therefore, conforms to the special and direct provisions of the removal law relating to the orders of the circuit court and to the whole spirit of our statute relating to contested rights to office, to construe affirmance by this Court of the trial court's order of removal as taking effect as of its date. Surely the legislature did not intend to remove all other impediments to a prompt settlement of such controversies, and then have all speed nullified by the somnolence of this one rule—to eliminate all obstacles to haste but one—to create a system of removal procedure apparently complete in itself, and yet in the end to have the final decision fall into the general routine of conventional orders of affirmance or reversal.

Furthermore, there seems to be statutory justification for this conclusion. The review here on appeal is not the ordinary or usual hearing of an appeal or writ of error. The statute (Code, 6-6-6) says:

"* * * the court shall decide the matter in controversy, both as to the law and evidence, as may seem to it to be just and right, * * *."

This is no review on error—no hearing on the law alone, but is actually a hearing *de novo* (on the original record, however). We hear the matter here exactly as the trial court, judge or governor heard it in the first instance. And our judgment is not a mere affirmance or reversal of the original order, but an independent and original judgment. The statute says:

"* * * the court * * * may affirm the order of removal, or may permanently suspend, set aside and vacate such removal and restore such officer to his office, * * *."

We, therefore, by the very mandate of the statute itself, enter such order as we consider proper, precisely as we would do in an original jurisdiction case. Why, therefore, should not the order here take effect at such time as orders in original jurisdiction cases? Or, why should not our order on such a hearing, *de novo,* as it is, take effect in time precisely as would that of the court below?

In my opinion the order of this Court, entered on March 15, 1941, affirming the circuit court's order removing Patrick H. Shields from the position of member of the Water Board of the City of Clarksburg became effective and final forthwith, and that there was immediately created a vacancy which the proper authorities could fill. Hence, Shields had no standing by which he could insist that he be permitted to remain in office longer, or to contest the filling of the vacancy which his removal had created.

Therefore, the writ here prayed for should be denied.

Judge Kenna concurs in this dissenting opinion.